THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LLOYD Z. JONES, Plaintiff in Error.

*Opinion filed October 26, 1909.*

1. MALICIOUS MISCHIEF—*an intent to kill animal need not be proved.* To sustain a conviction for malicious mischief under section 203 of division 1 of the Criminal Code, relating to killing, maiming or wounding of domestic animals, it is not necessary to prove that the animal was killed or injured by the defendant with intent to destroy its life, as the words "with the intent that the life of the animal shall be destroyed thereby" refer only to the exposing of poisonous substances.

2. SAME—*malice toward owner of animal must be proved under section 203.* To sustain a conviction for malicious mischief under section 203 of division 1 of the Criminal Code, relating to the killing, maiming, wounding or poisoning of animals, it is necessary to show that the defendant was actuated by malice toward some person, ordinarily the owner of the animal, but it need not be shown that the offender knew who owned the animal or that he had ever said or done anything to indicate malice toward such owner. (*Snap* v. *People,* 19 Ill. 80, explained.)

3. SAME—*inference of malice is one of fact for jury.* Malice may be, and frequently must be, inferred from the nature of the act itself and from the circumstances which accompany and characterize it, but the inference is not one of law for the court but one of fact for the jury.

4. SAME—*cruelty to animals is distinct from the offense of malicious mischief.* Since the revision of the Criminal Code in 1874 the offenses of cruelty to animals and of malicious mischief in killing or maiming a domestic animal are entirely distinct, the former offense having relation primarily to the suffering of the animal itself, and the latter relating chiefly to the injury to the owner of the animal, whoever he may be, by destruction of his property.

5. SAME—*proof that killing of animal was "absolutely" necessary to protect defendant's property is not required.* In a mali-

cious mischief prosecution, under section 203 of division 1 of the Criminal Code, for castrating a bull, an instruction requiring the jury to believe that the defendant's act was "absolutely" necessary for the protection of his property imposes a more stringent rule of conduct than is required by the doctrine of self-defense in cases of homicide, and is erroneous.

6. SAME—*right of a person to protect his property.* The inherent right of a person to protect his property is the right to do whatever, under the circumstances of the particular case, is apparently reasonably necessary for its defense; but the same rules do not apply as govern the defense of one's life, and the reasonableness of the force used depends in some degree upon whether the offense is against an animal or a human being.

7. EVIDENCE—*what evidence admissible on question of defendant's motive.* In a malicious mischief prosecution for castrating a bull which the defendant discovered in his pasture among his herd of another breed of registered cows, proof that when a cow once produces a cross-breed calf she has a tendency to cross-breed ever afterwards tends to show the seriousness of the injury to the defendant as a breeder of full-blood cattle, and is admissible as bearing upon his motive in castrating the bull.

8. SAME—*what is admissible as tending to show want of malice.* In a malicious mischief prosecution for castrating a bull which had attacked defendant after he had got it into his stable, proof that a bull which has once attacked a man will have the habit, for a long time, of attacking the same man and that the only known remedy is to· castrate the bull, is admissible for the purpose of showing want of malice by the defendant.

9. SAME—*any evidence fairly tending to show want of malice is admissible.* Even if a person does an act willfully or wantonly for the purpose of injuring an animal, it does not necessarily follow that he did it with malice toward the owner, and in such a case the question of malice toward the owner is the crucial point, and any evidence fairly tending to show lack of such malice by the defendant is admissible.

10. VERDICT—*when a verdict in malicious mischief prosecution is excessive.* A verdict imposing a fine of $550 and costs in a malicious mischief prosecution for castrating a bull is excessive and in violation of the provision of the bill of rights that "all penalties shall be proportioned to the nature of the offense," where the evidence tends to show that the bull was worth only about $40 and that the castration was done in the ordinary way, without unnecessary injury to the animal, which became an ordinarily healthy and valuable steer.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding.

N. F. ANDERSON, JAMES H. ANDREWS, and THOMAS J. WELCH, for plaintiff in error:

If malice against the owner of the animal killed or injured is the *gravamen* of the offense it must be proved. It has not been proved in this case. *Calef* v. *Thomas,* 81 Ill. 482; *Rex* v. *Austen,* R. & R. C. C. 490; *Rex* v. *Pierce,* 1 Leach's C. C. 527; *Hean's case,* 1 id. 527; *Rex* v. *Sheppard,* 2 id. 490; 2 East's Pleas of the Crown, 1072; *State* v. *Landreth,* 4 N. C. 446; *State* v. *Robinson,* 3 Dev. & B. 130; *State* v. *Lathan,* 13 Ired. 33; *State* v. *Wilcox,* 3 Yerg. 278; *Wright* v. *State,* 30 Ga. 325; *State* v. *Pierce,* 7 Ala. 730; *Northcutt* v. *State,* 43 id. 330; *Hobson* v. *State,* 44 id. 380; *Johnson* v. *State,* 61 id. 9; *Thomas* v. *State,* 30 Ark. 433; *Chappell* v. *State,* 35 id. 345; *United States* v. *Giden,* 1 Minn. 292; 3 Chitty on Crim. Law, 1086; *Commonwealth* v. *Waiden,* 3 Cush. 558.

It was error for the court to refuse to admit proper evidence tending to show that the defendant was acting in good faith and without malice or under a misapprehension of his rights. 14 Am. & Eng. Ency. of Law, (2d ed.) 15; *Calef* v. *Thomas,* 81 Ill. 482; *Wright* v. *State,* 30 Ga. 325; *State* v. *Graham,* 46 Mo. 490; *Newton* v. *State,* 3 Tex. App. 245; *Branch* v. *State,* 41 Tex. 622; *Lott* v. *State,* 16 Tex. App. 206.

The defendant was justified in injuring the animal in defense of his property and person. *Thomas* v. *State,* 14 Tex. App. 200; *Brady* v. *State,* 26 S. W. Rep. 621; *People* v. *Kane,* 29 N. E. Rep. 1015; *Farmer* v. *State,* 21 Tex. App. 423; *Wood* v. *State,* 27 id. 586; *Lane* v. *State,* 16 id. 172; *Aldrich* v. *Wright,* 53 N. H. 398; *Taylor* v. *Newman,* 4 B. & S. 89; *Barrington* v. *Turner,* 3 Lev. 28.

W. H. STEAD, Attorney General, JUNE C. SMITH, Assistant Attorney General, and CHARLES E. STURTZ, State's Attorney, (WM. C. EWANS, of counsel,) for the People:

In an indictment for malicious mischief to domestic animals it is not necessary to charge malice against the owner of such animals. *State* v. *Scott,* 19 N. C. 35; *Harris* v. *State,* 73 Ga. 41; *Swartzbaugh* v. *People,* 85 Ill. 457.

Where an offense is purely statutory it is sufficient to charge the offense in the language of the statute or so plainly that the nature of the offense may be easily understood by the jury. Crim. Code, div. 11, sec. 6; *Mohler* v. *People,* 24 Ill. 27; *Cross* v. *People,* 47 id. 153; *Cole* v. *People,* 135 id. 410; *Commonwealth* v. *Brown,* 141 Mass. 78; *State* v. *Smith,* 46 Iowa, 662; *McKinney* v. *People,* 32 Mich. 284.

It is not necessary that the People should prove direct expressions of hatred or ill-will. It will be sufficient if it appears from the evidence that the act was prompted by malevolence or revenge. *Calef* v. *Thomas,* 81 Ill. 478.

A party may be convicted and fined for malicious mischief in wounding an animal while it was trespassing upon his field. The fact that the animal was doing damage does not justify injuring it. *Snap* v. *People,* 19 Ill. 80.

A party complaining of an injury has no right to do unnecessary damage to an adverse party, notwithstanding the latter is in the wrong. *Calef* v. *Thomas,* 81 Ill. 478; Waterman on Trespass, sec. 686; Wood on Nuisances, secs. 834-838; *Great Falls Co.* v. *Worster,* 15 N. H. 412.

In cases of this kind it is not necessary to prove express malice against the owner of the animal maimed. From the commission of the unlawful act malice will be presumed until the contrary appears. 2 East's Pleas of the Crown, 1074; 3 Chitty on Crim. Law, 1087; *State* v. *Council,* 1 Tenn. 305; *Chappell* v. *State,* 35 Ark. 345.

An act that is wrongfully and purposely done is, in law, maliciously done. *Brown* v. *Master,* 104 Ala. 464;

*Thomas* v. *State,* 14 Tex. App. 758; 19 Am. & Eng. Ency. of Law, (2d ed.) 628.

No exceptions were taken to remarks of the court, hence that objection is not preserved for review here.

Mr. JUSTICE CARTER delivered the opinion of the court:

Lloyd Z. Jones, plaintiff in error, was found guilty by a jury in the circuit court of Henry county of willfully and maliciously castrating a certain yearling bull, and was fined $550 and costs. The Appellate Court for the Second District, on writ of error, affirmed the judgment of the trial court, and the cause has been brought here for review.

The indictment was based on section 203 of division 1 of the Criminal Code, (Hurd's Stat. 1908, p. 752,) and the part which is necessary for our consideration reads: "Whoever willfully and maliciously kills, wounds, maims, disfigures or poisons any domestic animal, or exposes any poisonous substance, with intent that the life of any such animal should be destroyed thereby, such animal being the property of another, shall be imprisoned in the penitentiary not less than one, nor more than three years, or fined not exceeding $1000, or both, provided," etc.

Plaintiff in error contends that under this statute, in order to sustain a conviction, it is necessary to prove that the animal was killed or injured by the defendant with intent to destroy its life. We do not agree with this contention. Under such a construction of the statute no injury of an animal could be held to be malicious mischief unless it could be proven that the person committing the act contemplated the death of the animal. The provision that the intent must be "that the life of any such animal should be destroyed thereby," refers only to the exposing of the poisonous substances, and not to the killing, wounding, maiming, disfiguring or actual poisoning.

Plaintiff in error's chief contention is, that under this provision of the statute malice towards the owner of the

property must be proved as an essential ingredient of the offense. The meaning usually attributed to the word "malicious" in criminal statutes is equivalent to "wrongfully, intentionally and without just cause or excuse." Malicious mischief or damage amounting to a crime is defined by Blackstone to be an injury done "either out of a spirit of wanton cruelty or black and diabolical revenge." (4 Blackstone's Com. *244; *Commonwealth* v. *Walden*, 57 Mass. 558; *Commonwealth* v. *Williams*, 110 id. 401). The meaning to be given the word "malicious" in criminal statutes necessarily depends quite largely upon the wording of the particular statute. By the weight of English and American authorities it is held, in construing statutes on malicious mischief similar to the one here in question, that the malice in injuring or killing animals must be directed against the owner of the property and not against the animal itself. Bishop on Stat. Crimes, (3d ed.) sec. 433; 2 East's Crown Law, 1072; *State* v. *Boies*, 1 Am. & Eng. Ann. Cas. (Kan.) 491, and note; 19 Am. & Eng. Ency. of Law, (2d ed.) 641, and cases cited; *Chappel* v. *State*, 35 Ark. 345; *State* v. *Pierce*, 7 Ala. 728; *Northcot* v. *State*, 43 id. 330; *State* v. *Landreth*, 4 N. C. 331; *State* v. *Wilcox*, 11 Tenn. 278; *Newton* v. *State*, 3 Tex. App. 245; Ingham on Animals, sec. 127; 2 Bishop on New Crim. Law, sec. 996; *Johnson* v. *State*, 61 Ala. 9.

It is argued by defendant in error that the construction put upon the statute of 1845 in *Snap* v. *People*, 19 Ill. 80, would indicate that this court's view then was that a person might be convicted and fined for malicious mischief for wounding an animal without proving malice towards the owner. We do not think this is a fair conclusion from the reasoning of that decision. But even conceding that view to be correct, the opinion would not necessarily be conclusive on the question here before us. That decision construed a part of section 156, division 11, of the then criminal law. (Rev. Stat. 1845, p. 179.) At that time there

was no section of the Criminal Code making it possible to find one guilty of cruelty to animals, such as is now the case. A law governing that offense was enacted in 1869, (Laws of 1869, p. 115,) and when the criminal laws of this State were revised and enacted in 1874 as our present Criminal Code, section 50 thereof (Hurd's Stat. 1908, p. 720,) provided a punishment for cruelty to animals. This section follows largely the provisions of the act of 1869. In that code comprehensive provisions were incorporated as to malicious mischief, (Hurd's Stat. 1908, pp. 749, 752,) including the section as to killing or injuring domestic animals, heretofore quoted. Cruelty to animals should not be confounded with malicious mischief. (Bishop on Stat. Crimes,—3d ed.—sec. 1100.) It is manifest that the legislature in revising and enacting the Criminal Code, in 1874, intended to distinguish clearly between cruelty to animals, having relation primarily to the suffering of the animal itself, and malicious mischief as to such animals, chiefly concerning the injury to the owner of such animal by the destruction of his property.

So far as we are advised this court has never been called upon to construe the section of the Malicious Mischief statute now under consideration. In *First Nat. Bank* v. *Burkett,* 101 Ill. 391, this court said (p. 394) : "Malicious mischief is the wanton or reckless destruction of or injury to property. It in some cases implies a wrong inflicted on another with an evil intent or purpose, and this is the sense in which it is employed in this statute." In that case the court was discussing the meaning of the word "malice" in the Insolvent Debtor act, and what was there said as to the meaning of this word has since been quoted with approval by this court.

While some of the sections of our present Criminal Code as to malicious mischief evidently do not require that malice towards the owner must be proven as an essential ingredient of the crime, we think it was the plain intent of the

legislature that in order to prove the crime charged in said section 203 it is necessary to show that the defendant was actuated by actual malice towards the owner of the animal injured or killed, otherwise the legislature must have acted so unreasonably as to have provided that the same offense, by the same act, should be subject to two punishments: one for cruelty to animals, having the comparatively mild penalty of from $3 to $200, and the other under the section for malicious mischief here in question, having a fine not exceeding $1000 or imprisonment for not less than one nor more than three years, or both. It is very evident that if malice towards the owner of the animal is not required to be proved under said section 203, then substantially the same proof would justify a conviction for malicious injury to an animal under this section as would justify a conviction for cruelty to the same animal under section 50 heretofore referred to. This surely was not the legislative intention. In order to constitute the offense of malicious mischief under this statute it is not enough to prove a spirit of cruelty toward the animal. The malice must be directed against some person, ordinarily the owner of the animal, but it need not be shown that the offender actually knew the owner. It will be sufficient to show that he was bent on mischief against the owner, whomsoever he might happen to be. (*State* v. *Leslie,* 138 Iowa, 104, and authorities cited; *State* v. *Prater,* 130 Mo. App. 348; *State* v. *Coleman,* 29 Utah, 417.) But it is not necessary, in order to prove malice within this rule, to show that the defendant ever said or did anything to indicate malice against the owner. Malice may be, and frequently must be, inferred from the nature of the act itself and from the circumstances which accompany and characterize it. The inference is not one of law for the court but one of fact for the jury. *Hobson* v. *State,* 44 Ala. 360; *People* v. *Olsen,* 6 Utah, 284; *Queen* v. *Smith,* 7 Nova Scotia, 729; *State*

v. *Churchill*, 98 Pac. Rep. (Idaho,) 853; *State* v. *Linde,*
54 Iowa, 139.

It is said that this case was tried in the lower court on
the theory now contended for by plaintiff in error,—that is,
that in order to convict the defendant the evidence must
show, beyond a reasonable doubt, that he was actuated by
malice towards the owner. Apparently, judged by the en-
tire series of instructions, the trial court so construed this
statute. The plaintiff in error, however, contends that even
though this be true, some of the instructions were of such
character, considering the nature of the evidence, that the
jury were necessarily misled in their consideration of the
case.

The evidence in the record is very brief. The State's
case rests largely, if not entirely, upon the testimony of the
plaintiff in error himself. It appears that he was a breeder
of registered short-horn and other high-grade cattle, for
which purpose he used a farm of some five hundred acres
in Galva township, in Henry county. In one of the fields
of his stock farm there were on October 25, 1905, twenty
or more registered short-horn cattle belonging to him.
Next to that pasture was a field used by one John John-
son as a pasture. Plaintiff in error testified that about one
o'clock that afternoon he saw the bull in question in his
pasture, serving one of his most valuable cows; that there
was another cow of the herd in heat; that by means of salt
he led the cows into the barnyard, the bull following, and
then succeeded in getting the bull into a stall in the milking
stable. As to what happened thereafter he testified substan-
tially as follows: "I penned the bull up and went to town.
About eight o'clock I went to the barn with a lantern. I
had forgotten I had the bull in there until the light showed
him in the stall. I went carefully up and reached out to
catch him. When I got about six inches from his nose he
went for me,—put his head down and came for me past the
stanchions and struck his whole weight against the barn,

and then he recoiled quick as that and kicked me twice, and the second time kicked out the lantern. He had me in a manger. I went to the house and got another lantern. I then looked at the bull, and he was chasing around the stall trying to get at me. I then climbed on the stanchions and got a loop of rope over his horns and tried to pull his head through the stanchions, but his head and horns was so big I couldn't get it through, so I twisted the rope over the top of the stanchions. I next went down into the stall and castrated him and turned him out into the darkness. I did not know whose bull he was at that time. It was not through malice I cut and castrated the bull. I castrated him because it got to be a contest between me and the bull for the possession of the milking stable, and I was alone on a 500-acre stock farm. I had no help. It was night. My long bull rope was gone, too. I castrated the bull because I did not dare turn him out with these same cattle again, on account of the other cow being bulling." Johnson and some other witnesses testified that the day after the bull was castrated they saw plaintiff in error and he gave them substantially the same information as to what he had done with the bull. The testimony also shows that another bull belonging to Johnson had broken into plaintiff in error's pasture a few days before this, different in size and color, and that Johnson had only bought this bull in question four days before October 25, and had kept him shut up in the barn until the morning of October 25, when he turned him into his pasture. We find no evidence in the record that plaintiff in error knew Johnson was the owner of the bull. On the contrary, we think all the evidence is consistent with the testimony of plaintiff in error that he did not think this bull belonged to Johnson, because only a few days before he had found an entirely different bull belonging to Johnson in his pasture and that that bull had been taken away by Johnson. On this state of the record the instructions on the question of malice should have been accurate.

Instruction 13 given for the People stated, among other things, that unless the jury believed, "from the evidence, that an ordinarily cautious and prudent man situated as was the defendant at the time he castrated said bull, as shown by the evidence, would believe that the castration of said bull was absolutely necessary for the protection of his property, and that his property could not have been protected by keeping said bull and his cows separate and apart, or that he could not have confined said bull or otherwise have reasonably protected his property, then such castration of said bull was unlawful," etc. That part of the instruction which reads, "absolutely necessary for the protection of his property," in our judgment was very liable, on the facts in this case, to mislead the jury. Even in self-defense in homicide cases, though section 149 of our Criminal Code provides that to justify homicide in self-defense it must appear "that the killing of another was absolutely necessary," the giving of an instruction containing these words has been uniformly held to be reversible error. (*Kipley* v. *People,* 215 Ill. 358, and cases there cited.) The same rules of law do not apply to the protection of one's property as in case of the defense of one's own life. The natural, essential and inherent right of protecting property is the right to do whatever, under the circumstances of each case, apparently is reasonably necessary to be done in its defense. Plaintiff in error might have entertained an erroneous idea of the character of this animal. The difference in the value of a human life from that of an animal requires reasonableness to be used as to the quality and quantity of the defensive force and with some reference to the consequences. A very exhaustive and instructive discussion on this subject is found in *Aldrich* v. *Wright,* 53 N. H. 398. This court, in *Calef* v. *Thomas,* 81 Ill. 478, in discussing a section of the statute then in force, said: "Still, the plaintiff is not to be deemed guilty simply because she misjudged her legal rights and acted with too much precipitation. If

a person of ordinary prudence and caution, situated as she was and subject to the influences that operated on her mind, would have supposed the act was necessary to the enjoyment of the use of the property, and she acted under that belief, she could not be held guilty of having acted maliciously." We think by the instruction here in question the plaintiff in error was held to a much more strict rule than in the case just referred to. The giving of the instruction in question was reversible error.

Plaintiff in error complains of instructions 3 and 4 given for the People, insisting they were not accurately drawn as to the question of malice. We are disposed to agree with this contention, but the errors in these instructions are not in themselves sufficient to justify a reversal.

Plaintiff in error also argues that the court erroneously modified his instructions 6 and 12. Those instructions were not accurately drawn as presented nor as modified by the court. Our views on the question of law involved are so fully set forth in this opinion that we do not deem it necessary to comment at length on these two instructions.

Plaintiff in error further insists that the court erred in not permitting him to introduce certain evidence to the effect that if a bull of another breed of cattle covers a cow and she produces what is called a cross-bred calf, there will remain with the mother a tendency to cross-breed ever afterwards. The court permitted plaintiff in error to testify that a cross-bred calf is worth about $5 the day it is born, while a full-blood calf of the character of cattle he was raising is worth from $50 to $100 at birth. We think the evidence as to the tendency to cross-breed was admissible for the same reason that the evidence showing a cross-breed was worth only $5 was admissible. This evidence tended to show the seriousness of the injury to the cows of plaintiff in error by having this bull loose among them, and would have a bearing on the motive that actuated him in doing what he did.

Plaintiff in error also insists that the court erred in not permitting him to introduce evidence to the effect that a bull which had once attacked a man will have a habit, for a long time thereafter, of attacking that particular man, and that the only known remedy is to castrate the bull. We are disposed to hold that this evidence was admissible for the purpose of showing want of malice on the part of plaintiff in error. In *Wright* v. *State,* 30 Ga. 25, it was held that proof that a mule shot by the defendant was of a thievish and ungovernable character should have been admitted in order to show that defendant's motive in shooting the mule was to protect his crop, and not through ill-will to the owner or cruelty to the animal. In *Woods* v. *State,* 27 Tex. App. 586, the defendant was prosecuted for castrating a stallion to prevent him from bothering defendant's brood mares. Defendant asked an instruction to the effect that if it reasonably appeared to defendant that his stock was in danger of injury from the stallion, and he inflicted the wound to prevent the injury, then he was not guilty. It was held error to refuse this instruction. In *Thomas* v. *State,* 14 Tex. App. 200, the defendant was convicted of willfully and wantonly killing four sheep. The defendant set up his right to protect his property. The court, in deciding the question, said that while it clearly appeared from the evidence that the defendant killed the sheep, it was also clear that he killed them in defense of his own sheep; that he had a flock of 1600 ewes upon the range in the month of July and that the bucks that were killed got with the ewes and were getting them with lambs. The testimony showed that lambs begotten at that season of the year would be born in the winter, and most of the lambs, as well as most of the mothers, would die. The court held that to make the killing of the sheep a willful act it must have been with malice and without legal justification; that to make it a wanton act it must have been committed regardless of the rights of the owner of the

sheep, in reckless sport or under such circumstances as evinced a wicked or mischievous intent and without excuse; that if the defendant killed the sheep in the necessary protection of his property, after using ordinary care to prevent injury which was being inflicted upon it, it would not be a willful or wanton act, within the meaning of the statute. *Burlington* v. *Turner,* 3 Lev. 28, was an action of trespass for killing two dogs. The defendant pleaded that the dogs killed a deer in his park, and in order to prevent more mischief by them he killed them. This was held a good plea. Even if a person does an act willfully or wantonly, for the purpose of injuring an animal, it does not necessarily follow that he did it with malice toward the owner. The words "wanton," "willful" and "unlawful," under the authorities, do not necessarily mean, in statutes on malicious mischief, the same as "malicious." (19 Am. & Eng. Ency. of Law,—2d ed.—643, 644, and authorities cited; 25 Cyc. 1677, and cases cited; Words and Phrases, 4307. See, also, *Glover* v. *People,* 204 Ill. 170.) The question of malice and the intent of the plaintiff in error in committing the act in question was, as we have seen, the crucial point in this case. Any evidence that fairly bore on this point should have been admitted for the consideration of the jury.

Counsel for plaintiff in error further argue, that, even though the evidence justified submitting this case to the jury, the verdict must be held excessive and should not be allowed to stand; that the proof shows that the bull was worth only $40; that it was castrated without cruelty or unnecessary pain and in such a way that it became an ordinarily healthy and valuable steer. We are inclined to agree with the contention of plaintiff in error that the verdict is excessive. While this is not a suit to reimburse the owner, we can hardly understand how a jury, unless moved by passion or prejudice or by a misunderstanding of the law, could, on the facts in this case, have fixed so severe

a punishment. It is evident from the remarks of the trial judge found in the record that he felt the same way as to the verdict but hesitated to set it aside. Under our bill of rights "all penalties shall be proportioned to the nature of the offense." We think this verdict was excessive.

Complaint is also made of some remarks of the judge presiding at the trial. We think this complaint is without merit. The court's remarks, in our judgment, were not improper or calculated to mislead the jury.

For the errors indicated, the judgments of the Appellate and the circuit courts will be reversed and the cause remanded to the circuit court.

*Reversed and remanded.*