## WIGGIN v. STATE
(No. 1064; Decided May 15, 1922; 206 Pac. 373)

ANIMALS—"MALICE" AS USED IN STATUTE DEFINED—INSTRUCTIONS —LIVESTOCK BRANDS ARE PRIMA FACIE EVIDENCE OF OWNERSHIP— SEARCHES — SEIZURES — ARREST — CRIMINAL LAW — SEARCH MADE UPON UNLAWFUL ENTRY—INFORMATION GAINED WITHOUT FORCE OR STEALTH AS TO LOCATION OF STOLEN PROPERTY MAY BE USED.

1. Under Comp. St. 1920, § 7123, making it a crime to "willfully and maliciously kill any horse, mule, sheep, goat or neat cattle" belonging to another, the defendant must have been actuated by actual malice toward the owner or possessor of the animal, and mere legal malice inferred from the willful doing of an unlawful act is insufficient to constitute the "malice" referred to in the statute.

2. In prosecution for willfully and maliciously killing a head of neat cattle in violation of Comp. St. 1920, § 7123, instruction defining "malice" *held* insufficient.

3. In prosecution for willfully and maliciousy killing a head of neat cattle in violation of Comp. St. 1920, § 7123, evidence that a brand, a certified copy of which was introduced in evidence, was owned by certain persons, was *prima facie* evidence that such persons owned animal

bearing such brand under Sections 3095, 7474, and though such persons, though witnesses, failed to testify directly that they owned the animal bearing such brand.

4. Affidavit for search and seizure not showing .probable cause, and made merely upon the belief of the affiant, *held* insufficient, and a warrant for search ,and seizure issued thereon was invalid.

5. An officer has the right to search the party arrested and take from his person and from his possession, and from hand bags, sacks, and other things that he carries about with him, and from any place to which lawful access has been obtained, property reasonably believed to be connected with a crime and the fruits, means or evidences thereof, and may take property of evidentiary value shown him by the prisoner, and he may take and hold them to be disposed of as the court directs, notwithstanding Const. Art. 1, § 4, relating to unreasonable searches and seizures, and Section 11, relating to self-incrimination.

6. A search made pursuant to an admission gained unlawfully by stealth, force, or coercion is illegal.

7. An officer may ask a prisoner whom he has arrested where stolen or other property is, and information so gained may be used if it can be done without force or stealth.

ERROR to the District Court, Goshen County, WILLIAM C. MENTZER, Judge.

Orrin G. Wiggin was convicted of willfully and maliciously killing a head of neat cattle, and brings error. Reversed and remanded.

*Kinkead, Ellery & Henderson,* for plaintiff in error.

Malicious killing within the meaning of the statute must have been done out of a spirit of cruelty, hostility or revenge directed against the owner of the animal killed. (7123 C. S.) Malice necessary to constitute the offense is something more than the malice which is ordinarily inferred from the willful doing of an unlawful act without excuse. (7146 C. S. State v. Johnson, 7 Wyo. 512.) The Johnson case is an interpretation of Section 7146 C. S. but the same principle should apply in an interpretation of the effect of Section 7123 C. S. The instruction of the trial court defin-

ing malice is in conflict with the doctrine of the Johnson case. Cases decided under statutes similar to 7123 and 7146 since the decision in the Johnson case seem to establish beyond question that the doctrine of that case is sound. (State v. Mussey, (Vt.) 18 Atl. 895; State v. Leslie, (Ia.) 115 N. W. 897; People v. Jones, 24 Ill. 482; State v. Minor, (N. D.) 117 N. W. 528; Bouvier, 3d Ed. 2069.) It was essential that the word malice as used in the statute be correctly defined in an instruction, since it was a vital element of the offense charged, and the malice must have been directed against the owner. (People v. Jones, supra; Brown. v. State, 26 O. St. 176; State v. Berry, (S. D.) 177 N. W. 1012; State v. Lightfoot, 78 N. W. 41; People v. Petheran, 31 N. W. 188; Hobson v. State, 44 Ala. 380; Chappell v. State, 35 Ark. 345; State v. Beekman, 27 N. J. L. 130; Shirely v. State, 22 S. W. 42; State v. Tarton, 118 N. W. 707.) The trial court erroneously refused defendants requested instruction No. 12 which is believed to be a correct statement of the law. (Gardner v. State, 196 Pac. 750.) The ownership of the S. E. O. brand was proven but the ownership of the animal described in the information was not otherwise proven. While the brand is *prima facie* evidence of ownership the statute requires such evidence to be established and corroborated with other evidence, which was not done. (3095 C. S.) The court erred in denying defendant's motion for an instructed verdict on the ground that the state had not proved ownership of the animal killed. (Reg. v. Forsythe, 4 N. W. T. 319; State v. Wolfley, 75 Kans. 406.) The court erred in overruling defendants motion to suppress evidence procured under the search warrant. (Constitution, Art. 1, Section 4. 24 R. C. L. 709; Reed v. Rice, 19 Am. Dec. 122; State v. Slamm, 87 Am. St. Rep. 711.) The affidavit upon which the search warrant was issued was made on information and belief and did not contain allegations of fact tending to show upon what deponent based his belief. (In Re Coke Co., 253 Fed. 605; State v. Peterson, (Wyo.) 194 Pac. 342; U. S. v. Slusser, 270 Fed. 818.) The search warrant under which the sher-

iff took possession of the hide introduced in. evidence was void and the search thereunder illegal and invalid.

*W. L. Walls,* Attorney General, *Vincent Carter,* Deputy Attorney General and *W. A. James,* Assistant Attorney General, for defendant in error.

Section 7123 C. S. was not in effect at the time the Johnson case was decided, and that case was predicated upon a prosecution brought under 7146 C. S.  It is contended that there is a similarity between the two statutes.  The distinguishing element in both offenses as defined by Section 7123 and 7146 is malice, one a misdemeanor and the other a felony.  Section 7123 was enacted as a substitution for 4990 R. S. 1899.  There is a marked distinction between the two offenses, that upon comparison will sustain Instruction No. 8 given by the trial court in the present case.  The law implies malice where one deliberately injures another in an unlawful manner.  (Gallahan v. State, 28 Tex. App. 247; Alt v. State, 88 Neb. 259; Caldwell v. State, 55 Tex. Crim. 164.)  Malice embraces an act wrongfully and intentionally done without just cause and does not imply malevolence or enmity toward any individual.  (Pennington v. Meek, 46 Mo. 217.)  The ownership of the brand was proven and the animal in question was identified by several witnesses before the killing and the hide was identified by witnesses after the killing as belonging to the animal killed.  The brand belonged to Frederick Brothers, a fact clearly established by the evidence.  The ownership of the animal was established within the meaning of Sections 3095 and 7474 C. S.  Reg v. Forsythe, cited by plaintiff in error is a quotation from the dissenting opinions in the case.  State v. Wolfley did not approve of the doctrine of Reg v. Forsythe, noted in plaintiff's brief.  We refer the court to the following contra decisions.  (Territory v. Chavoy, 30 Pac. 903; State v. Cardelli, 10 Pac. 433; State v. Wolfley, 12 Ann. Cas. 412.)  The affidavit upon which the search warrant was issued was sufficient under the statute, 7610 C. S.  The warrant was issued upon probable cause

and described the premises to be searched and the goods and chattels which were the object of the search.

BLUME, Justice.

The defendant below, Orrin G. Wiggin, was tried and convicted of wilfully and maliciously killing a head of neat cattle, contrary to the provisions of Section 7123 of the Wyoming Compiled Statutes 1920 reading as follows:

"Whoever wilfully and maliciously kills any horse, mule, sheep, goat, or neat cattle, the same being the property of another, shall be deemed guilty of a felony, and upon conviction thereof shall be imprisoned in the penitentiary for not more than fourteen years."

The defendant was sentenced to from 3 to 6 years in the penitentiary, and the case has been advanced for hearing on account of the showing that the defendant has, since his conviction in February, 1921, been incarcerated therein.

1.   The defendant asked an instruction to the effect that the jury must find that the killing of the animal was done through malice, hatred or ill will toward George and Henry Frederick, or that the killing was so cruel that malice could be inferred therefrom.   Other similar instructions were asked.   All these were refused and error is alleged by reason thereof.   The court gave, on this subject, over the objection of the defendant, the following instruction:

"You are instructed that malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive.   Malice is not confined to ill-will toward an individual, but is intended to denote an action flowing from any wicked and corrupt motive, a thing done with a wicked mind, where the fact has been attended with such circumstances as evince plain indications of a heart regardless of social duty, and fatally bent on mischief; hence malice may be implied or inferred from any deliberate and cruel act against another, or his property, which shows an abandoned and malignant heart."

The case of State v. Johnson, 7 Wyo. 512, 54 Pac. 502, is a case involving malicious mischief, and the court in

speaking of the malice essential to be shown in such cases, although the act there involved was only a misdemeanor, said in part:

"The authorities are nevertheless substantially agreed that the malice necessary to constitute the offense is something more than the malice which is ordinarily inferred from the wilful doing of an unlawful act without excuse. The statutes were not intended to make every wilful and wrongful act punishable as a crime, but they are devised to reach that class of cases where the act is done with a deliberate intention to injure.  *  *  *  And it seems to be generally held that in order to bring an offense under the head of malicious mischief it must appear that the mischief was itself the object of the act, and not that it was incidental to some other act lawful or unlawful."

The principle laid down in that case that the malice in such cases is something more than what is ordinarily understood as legal malice, but is that malice as it is more ordinarily understood in common speech, has been the settled rule of law in this state since 1898, and we see no reason for departing therefrom. Statutes punishing injury or destruction of animals have practically uniformly been construed as in affirmation or enlargement of the common law on malicious mischief, and we see no good reason for construing our statutes differently. We think that the history of the legislation in this state on the subject of killing animals clearly shows that the malice referred to in Section 7123 was intended to mean more than the mere wilful doing of an unlawful act without excuse. The authorities are substantially agreed that the malice essential for conviction is not malice directed toward the animal injured or destroyed, and particularly is that true in our state in view of the statute punishing cruelty to animals. Nor do we think that it was in contemplation of the legislature to make a case where a person is guilty of larceny of an animal at the same time a case of malicious and wilful killing an animal, simply because the animal was killed. The killing must be wilful and malicious in order to convict under

Section 7123. As said in the case of State v. Johnson, supra, the mischief must itself be the object of the act and not merely incidental to some other act lawful or unlawful. (See also Hampton v. State, 10 Lea (78 Tenn.) 639.) A somewhat similar question to that at bar arose in Johnson v. State, 61 Ala. 9, where the defendant Johnson was apparently guilty of larceny of wood cut from premises. The court, reversing the case, said in part:

"It will be observed that this offense, the other ingredients being present, is complete, without the asportavit. The controlling words are *wilfully* and *maliciously*. No matter how inexcusable the trespass, the criminal offense is not made out, unless the act is wilfully and maliciously done. Wilfully is a strong word, much stronger than the word intentionally. (See Mitchell v. The State, 60 Ala. 26.) It means governed by the will, obstinate, perverse. Maliciously, in this sentence, is still more significant and controlling. It means with ill will, malevolence, spite, wicked intention, enmity. And this ill will cannot exist without an object. It must be aimed at some one; and assimilating this offense to malicious mischief, which it very much resembles, we hold the malice the culprit entertains must be directed to the owner of the premises."

It is undoubtedly true that, by the great weight of authority, the malice in such cases must be directed against the owner or possessor of the property injured or destroyed. We shall cite only a part of the authorities: 3 C. J. 166; 19 Am. & Eng. Ency. of Law, 641; Hobson v. State, 44 Ala. 380; Chappell v. State, 35 Ark. 345; People v. Jones, 241 Ill. 482, 89 N. E. 752, 16 Ann. Cas. 332; State v. Leslie, 138 Iowa 104, 115 N. W. 897. U. S. v. Gideon, 1 Minn. 292; State v. Beckman, 27 N. J. L. 124, 72 A. D. 352; State v. Newby, 64 N. C. 23; State v. Miner, 17 N. D. 457; 117 N. W. 528, 19 L. R. A. N. S. 273; Com. v. Shaffer, 32 Pa. Super. Ct. 376; State v. Wilcox, 3 Yerg. 278 (Tenn.), 24 A. D. 569; Newton v. State, 3 Tex. App. 245; State v. Muzzy, 87 Vt. 267, 88 Atl. 895; Town of Fletcher v. Kezer, 73 Vt. 70, 50 Atl. 558; State v. Barry, 43 S. D. 85; 177 N.

W. 1012. (See also State v. Foote, 71 Conn. 737, 43 Atl. 488; Dawson v. State, 52 Ind. 478; State v. Churchill, 15 Ida. 645, 98 Pac. 853, 19 L. R. A. N. S. 835, 16 Ann. Cas. 947; Com. v. Williams, 110 Mass. 401; Duncan v. State, 39 Miss. 331; Brown v. State, 26 Oh. St. 176.) This point was not decided in State v. Johnson, supra, although reference to it was made. The state of the law on the subject as applied by the courts was not then and is not now entirely harmonious and satisfactory, and that is true, at times, as to cases decided even in the same jurisdiction. We have been trying to harmonize the various cases on the subject, but have not altogether succeeded in doing so. The language of the court used in the case of People v. Jones, supra, expresses the rule on the subject, as interpreted by the later cases, and states, in our judgment, the more reasonable rule. In that case, the Illinois Supreme Court was construing a statute nearly like ours, except only that the prohibition against killing of and the injury to the animal are embraced in the same section. The court in that case said:

"In order to constitute the offense of malicious mischief under this statute, it is not enough to prove a spirit of cruelty toward the animal. The malice must be directed against some person, ordinarily the owner of the animal, but it need not be shown that the offender actually knew the owner. It will be sufficient to show that he was bent on mischief against the owner, whosoever he might happen to be. * * * But it is not necessary, in order to prove malice within this rule, to show that the defendant ever said or did anything to indicate malice against the owner. Malice may be, and frequently must be, inferred from the nature of the act itself and from the circumstances which accompany and characterize it. The inference is not one of law for the court, but one of fact for the jury."

The defendant in this case was entitled to an instruction clearly stating the rule on this subject. Tested by what we have said, it is clear that instruction No. 8 of the court, the only instruction on that subject given, did not do so. Without attempting to analyze it in detail, it fails

not only to state the fundamental principles set forth in the case last cited, but is also contrary to the case of State v. Johnson, supra. We cannot, accordingly, do otherwise than reverse the case. We think the instruction clearly prejudicial, and we cannot let the conviction of a man of a crime of which he is not properly proven to be guilty, stand. There must be an orderly, systematic administration of justice, else it will end in chaos, and the guilt or innocence of a man will come to depend upon the caprice of jurors or judges. Despite the momentary temptation to let the man convicted of a crime of which he is not properly proven guilty suffer under that conviction, though wrong, the penalty of that of which he may be guilty, we must set our faces sternly against that temptation, in order not to subvert our whole structure of civilization. While we continually aim to let the principle of justice prevail in each particular case, yet we cannot lose sight of the fact that justice in the long run is absolutely dependent upon the fact that it must be administered according to the law of the land and in an orderly, lawful method, and the justice administered in a particular case must be consistent with and meted out in the spirit of that fundamental principle which sustains our civilization, not for today or tomorrow, but for the ages to come. It is argued that the evidence fails to show any malice, as that term is understood in such cases. But as the case must be remanded for a new trial we do not think we should express an opinion as to that matter.

2. There was introduced in evidence a certified copy of the SEO brand, supposedly on the animal killed by the defendant, and which brand was shown to be owned by George and Henry Frederick. It was also shown, inferentially at least, though the evidence is not strong, that the owners of the brand owned animals of that brand, and that they never sold any animals to the defendant. It seems that the animal in question was well marked and readily known, and counsel for defendant seem to contend that in view of the fact that the owners of the brand were witnesses in the case, they should have been able to testify

directly that they owned the animal in question, which they failed to do, and that hence there is no corroborating evidence as required by Section 3095 of our statutes, in order to make the certified copy of the brand *prima facie* evidence of ownership of the animals of that brand. We do not think the point well taken. It is not that kind of evidence required for corroboration. If it were, the force and intention of our statute making ownership of the brand *prima facie* evidence of the ownership of the animals of that brand, as mentioned in Sections 3095 and 7474 of the statutes of 1920, would be totally destroyed. It is, certainly, frequently practically impossible for the owner of a large herd of animals to know each of his individual heads, and this is none the less true, because an animal may have a distinctive natural mark differentiating it from the others. Some owners may mingle with their herds, some may not: and those that do not, and, therefore, do not know the individual, distinctive natural marks of their animals, are not, for that reason, deprived of the benefit of the rule of evidence made by the legislature.

3. Before the arrest of the defendant an affidavit was filed before a justice of the peace charging that one head of neat cattle, branded SEO on left side belonging to said Henry Frederick and George Frederick of the value of $100 had been by some person feloniously taken and carried away, and "that the said goods and chattels, as complainant verily believes are concealed by one Orrin G. Wiggin, he knowing the same to have been stolen * * * and this complainant says that he verily believes that Orrin C. Wiggin is guilty of the above fact charged," and that he conceals the same at his cellar, barn, etc., at Lingle in said county. A warrant was thereupon issued by said justice, which directed both the arrest of the defendant, as well as the search of the premises described in the complaint. It appears that the defendant was accordingly arrested and a hide with the brand cut out and four quarters of beef seized and brought before the justice. Thereupon a criminal complaint was filed charging the defendant with lar-

ceny of said head of neat cattle. On this charge defendant
was arraigned and bound over to await the action of the
district court. This charge was apparently abandoned and
the defendant was tried and convicted as above mentioned
on an information filed February 22, 1921, which involved
the same head of neat cattle heretofore mentioned. Before
the commencement of the trial a motion was made to sup-
press the evidence obtained by reason of the search and
seizure of the hide referred to. The motion was overruled
and error is predicated thereon. Counsel point to Sec. 4
of Article I of our Constitution, reading as follows:

"The right of the people to be secure in their persons,
houses, papers and effects against unreasonable searches and
seizures shall not be violated, and no warrant shall issue
but upon probable cause, supported by affidavit, particu-
larly describing the place to be searched or the person or
thing to be seized."

And there is further involved here Sec. 11 of Article I of
our constitution providing that "no person shall be com-
pelled to testify against himself in any criminal case."
There is no showing in the foregoing affidavit for search
and seizure of any probable cause, and it was made upon
the belief of the affiant. That kind of affidavit was con-
demned by this court in the case of State v. Peterson, 2′
Wyo. 185, 194 Pac. 342, 13 A. L. R. 1284. The ruling in
that case is sustained, we think, unanimously by all the
courts in this country, and we do not wish to depart there-
from. The United States Supreme Court in the recent case
of Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261,
65 L. Ed. 647, speaking of the constitutional provisions cor-
responding to those cited above, and speaking of the deci-
sions thereon, says:

"The effect of the decisions cited is: That such rights
are declared to be indispensable to the 'full enjoyment of
personal security, personal liberty and private property;'
that they are to be regarded as of the very essence of con-
stitutional liberty; and that the guaranty of them is as im-
portant and as imperative as are the guaranties of the

other fundamental rights of the individual citizen—the right to trial by jury, to the writ of *habeas corpus,* and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers.''

While fully adhering to and concurring in the foregoing views, there is involved in this case another principle which has not been argued by either side. The affidavit in this case not only prayed for search and seizure, but it also charged the defendant with a felony, that of concealing stolen goods with knowledge that they were stolen, and the warrant issued thereon, and pursuant to which the hide was taken, not only authorized seizure and search, but also commanded the sheriff to arrest the defendant. Though, therefore, the warrant as a warrant for search and seizure was invalid, the question still remains as to what right the sheriff had pursuant to the command to arrest the defendant. Sec. 4 of Article I of our Constitution must necessarily be construed in the light of the immemorial usages in connection with the rightful arrest of a defendant. In such cases the right of seizure of certain property is incidental to the right of arrest. (North v. People, 139 Ill. 81, 28 N. E. 966.) It is not altogether clear from the authorities as to the extent to which the usage mentioned has prevailed and is fully recognized. The law is well settled that an officer has the right to search the party arrested and take from his person and from his possession property reasonably believed to be connected with the crime, and the fruits, means or evidences thereof, and he may take and hold them to be disposed of as the court directs. (Bishop Crim. Proc. § 211; Wharton Crim. Proc., Vol. 1, Sec. 97. 5 C. J. 434. Weeks v. United States, 232 U. S. 383, 392, 58 L. Ed. 652. Note L. R. A. (N. S.) 1916 C., p. 1017.) In United States v. Mills, 185 Fed. 318, the court said:

''From time immemorial an officer making a lawful arrest on a .criminal charge has taken into his possession the instruments of the crime and such other articles as may reasonably be of use as evidence on the trial. A blood-stained knife or garment, a half emptied phial of poison, a mask or disguise, counterfeit coins, plates for printing counterfeit notes, gambling devices, stolen property, and many other articles are thus seized every day on the person or the premises of the alleged criminal, and no one disputes the propriety of such seizure.''

What is meant by ''possession'' of defendant in this connection, is not entirely clear. There is no doubt whatever under the authorities, that if the property of the kind mentioned above is in the *immediate* possession of the defendant, it may, after lawful arrest of the defendant, be seized. Thus not alone what a defendant has on his person, but also his handbags, sacks and other things that he carries about with him, if of evidentiary value, may be thus seized. (Turner v. Com., 191 Ky. 825, 231 S. W. 519; Com. v. Riley, (Ky.) 232 S. W. 630; Youman v. Com., 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303.) Nor can there be any doubt that where property of that character is, at a place to which lawful access has been obtained, visible to the officer, ready to be taken, that he may, upon the lawful arrest of the defendant, seize and take it into his possession. (State v. Mausert, (N. J.) 95 Atl. 991, L. R. A. (N. S.) 1915 C. 1014; State v. Quinn, 111 S. C. 174, 97 S. E. 62, 3 A. L. R. 1500; State v. Rôgne, 115 Minn. 204, 132 N. W. 5; Com. v. Riley, supra. Banks v. Com., 190 Ky. 330, 227 S. W. 455; Herine v. U. S., 276 Fed. 806.) In Collins v. Lean, 68 Cal. 284, 9 Pac. 173, it was held that a search warrant authorizing the search of the person further authorized the picking up of lottery tickets found under a counter, for which no particular search was necessary. There are cases which go further. The recent leading case is Smith v. Jerome, 47 Misc. Rep. 22, 93 N. Y. S. 202, 16 N. Y. Ann. Cas. 153. In that case the court said:

"The police have the power and it is also their duty to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested. We have no statute defining this power or prescribing this duty, but the ends of justice require that they should exist, and they have been exercised under the common law from time immemorial. The authorities on this head seem to be few, but only because the thing has seldom if ever been questioned."

In People v. Kalnin, 189 N. Y. S. 359, decided in June, 1921, the court said:

"The law is well settled in the state of New York, that the police have the power, and it is their duty, to search the person arrested and the place in which he is arrested, without a warrant for making such search."

The court cites the case of Smith v. Jerome, supra. The latter case has been cited with approval in other cases; People v. Cons, (1914) 180 Mich. 641, 147 N. W. 525, where the court permitted to be shown that two revolvers were found in drawers of the room where defendant was arrested; United States v. Wilson, 163 Fed. 338, where a trunk check found upon the person of defendant was held properly usuable for the purpose of obtaining from the Railroad Company the trunk and its contents. In Banks v. Farwell, 21 Pick. 156, decided in 1838, it was held under a statute which largely expresses only the common law rule of the right of the arresting officer, that no search may be made by an officer arresting a defendant, by breaking open a house or shop; but that if the prisoner tells the officer where stolen property is, that it is not alone the right but also the duty of the latter to seize the property, and do so, if necessary, by force. (See also Houghton v. Bachman, 47 Barbour, (N. Y.) 388.) It is not necessary for us to decide the point involved in the cases last cited, but we have mentioned them to show the extent to which some of the courts have gone. The point is not now directly be-

fore us, and the fact that it has not been argued makes it improper for us to pass upon it. The case before us suggests, however, the difficulty encountered by the courts in construing the constitutional provisions above quoted, so as to leave on the one hand, unimpaired the force and vigor thereof, and on the other hand not abrogate the immemorial rights exercised in connection with lawful arrests. Whether or not courts, in arriving at the result aimed, and in order to prevent a "gradual depreciation" of the constitutional rights, will or will not ultimately be forced to draw a line of distinction between the various classes of crimes, is a question which we need not now decide.

In the case at bar the property seized was claimed as stolen property. It appears, though not altogether from the proof that was before the court upon the motion to suppress the evidence, that the defendant was arrested, but whether at or about the time of the seizure, or on the same or a subsequent day is not shown. The sheriff, it seems, informed the defendant that he had a search warrant and wanted the hide in question. The defendant answered "all right" and took the sheriff to the place where the hide was, opened it and showed it to him. Counsel for defendant claim that the seizure was made under coercion; that the possession of the search-warrant, of which defendant was informed, itself shows that the action of the defendant was not voluntary. A search made pursuant to an admission gained unlawfully by stealth, force or coercion is illegal, and it has been held that coercion is implied when the officer displays his badge or shows an illegal warrant and thus obtains the acquiescence for admission. (United States v. Slusser, 270 Fed. 818; In Re Tri-State Coal Co., 253 Fed. 605; Gouled v. United States, supra; Amos v. United States, 255 U. S. 313; 41 Sup. Ct. 266, 65 L. Ed. 654.) We do not, however, believe that an officer should be prohibited from asking a prisoner where stolen or other property is, and information thus gained may be used, at least if that can be done without force or stealth. We think it clear, too, that an officer may, pursuant to a lawful arrest,

seize not only property of evidentiary value which is open to view, but also such as is voluntarily shown him by the prisoner. Nor do we think that when such prisoner, so lawfully under arrest, takes the officer to a place where such property is located without threat or compulsion, but simply upon being asked where it is, such facts should be said to constitute coercion. (See Houghton v. Bachman, 47 Barb. 388; Bank v. Farwell, 21 Pick. 156.) It is unnecessary at this time to determine as to whether or not the lower court should have sustained the motion for suppression of the evidence upon the proof then before it. Should the motion be renewed upon the further proceedings in this case, the proof may be more complete and different, and hence we have deemed it advisable to discuss to some extent the general principles that should be then considered, but purposely refrain from deciding points that may be said to be disputable and should receive fuller consideration after argument of counsel thereon.

The case is reversed for the error in the instruction upon the question of malice, and is remanded to the lower court for a new trial.

*Reversed and remanded.*

POTTER, Ch. J., and KIMBALL, J., concur.