## STATE v. ROTOLO
(No. 1489, October 9, 1928; 270 Pac. 665)

*M. C. Burk,* for appellant.

*W. O. Wilson* and *John Dillon,* Special Attorney General, for respondent.

Riner, Justice.

Carmelo Rotolo was convicted in the District Court of Fremont County, Wyoming, on the charge of being in possession of a still, used, designed and intended to be used by the said Carmelo Rotolo for the manufacture of intoxicating liquor. He has brought the record in the case here for review by direct appeal.

The evidence material to be considered in connection with the questions argued is substantially as follows: On May 23, 1927, the Deputy Sheriff of Fremont County was engaged, with other officers, in searching the premises of a neighbor of Rotolo at or near the town of Hudson. While the search was being carried on, a number of people gathered to observe the proceeding. During the time the people were present and while the search was progressing, the deputy sheriff noticed a man leave the crowd and run towards Rotolo's premises. Simultaneously the officer heard someone say: "There he goes to tip Tony off." The deputy immediately followed the man who was running, saw him go to the back of Rotolo's house, and saw Rotolo immediately come out and engage in conversation with the man for a few moments. Thereupon both men went to a shed back of the Rotolo house and from there the man who had been running proceeded onward toward town. Meanwhile the officer, who was all the while drawing near the premises, observed Rotolo go into the shed, come out with part of a still in his arms, cross to a small shed located nearby but on another person's property, place the article in that shed and then run hastily back to his house. The officer was about twenty-five feet distant when Rotolo came out of the shed, after leaving the article there. The former continued on to the shed, took out the utensil placed there by Rotolo—it being found to be yet hot—and immediately went to the lat-

ter's house and placed him under arrest. Then the deputy took his prisoner and the article .thus obtained to the shed from which Rotolo had taken it, and there found a coil in position in a barrel of water, four barrels of mash— three full and one half full—a pint bottle about one-third full of liquor, a sack of corn, a sack of sugar and a gas stove—burning at the time. When the arrest was made, Rotolo said he could not get work at the mine and that was the only thing he could get to do. On cross examination, the officer testified that before he made the arrest he could see that the article which Rotolo carried over to the shed on the other premises was a still; that he was sure of it, as he had seen so many. The only witness for the defense, a neighbor of Rotolo's, testified that the officer could not see the outbuildings back of Rotolo's premises from where he said he saw them. The witness, however, was absent from home at the time of the occurrence and did not see the course followed by the officer in going to the Rotolo premises.

A motion was made by appellant prior to trial to suppress the evidence thus obtained by the State, and at the conclusion of the trial, also, a similar motion was interposed, as well as a motion for a directed verdict in appellant's favor. These were all overruled and to the several rulings of the court due exceptions were saved.

· It is urged for appellant that the arrest and search made by the deputy sheriff were illegal, being made without a warrant, and that the latter had nothing but suspicions and suspicious circumstances upon which to act. It is frankly conceded, however, by counsel, that if a crime was being committed in the presence of the officer, he could arrest the defendant and take whatever he found in his possession.

Section 7349, W. C. S. 1920, makes it the duty of a deputy sheriff to arrest "any person found violating any law of this state." It is unlawful and a misdemeanor for anyone to "possess * * * any property designed for

the manufacture of liquor intended for use in violation'' of the prohibition laws of the state (Laws 1921, c. 117, Sec. 25). Being the owner of, or operating or knowingly possessing a still used, designed and intended to be used for the manufacture of intoxicating liquor, is declared to be a felony (Laws 1927, c. 28). In the record before us, the affirmative testimony is that the officer saw appellant in possession of part of a still and that the latter was endeavoring to free himself from such possession before detection. In the case of State v. George, 32 Wyo. 223, 231 Pac. 683, the following rules were announced, upon authorities cited:

"In cases of misdemeanor, the right to arrest without a warrant is limited, ordinarily at least, to cases where the offense is committed in the presence of the officer. Information, in such case, justifying him in the belief that an offense has been committed, will not authorize him to make an arrest. The facts constituting the offense must have been within the knowledge of the officer, and that knowledge must have been revealed and the facts capable of being observed in the officer's presence. * * * Where a felony has been committed, the right of arrest without a warrant is broader than in cases of misdemeanor; and according to the general rule, which we have no reason to doubt is in force in this state, a peace officer may arrest without a warrant, one whom he has reasonable or probable grounds to suspect of having committed the felony.''

Tested by these principles the officer was fully justified in making the arrest of appellant. It is true there is negative testimony in the record to the effect that the officer could not have seen what he claims to have seen, but this only made the matter a question for the jury, under proper instructions, and there appears to be no complaint before us as regards them. Going upon appellant's premises and arresting him under the circumstances here disclosed, the officer's presence there was lawful and the arrest of Rotolo was lawful. That being so, what search

could the deputy make as incident to such an arrest? In the George case, supra, quoting from the previous decision of Wiggin v. State, 28 Wyo. 480, 206 Pac. 373, this court remarked concerning this question:

"The law is well settled that an officer has the right to search the party arrested and take from his person and from his possession property reasonably believed to be connected with the crime, and the fruits, means or evidences thereof, and he may take and hold them to be disposed of as the court directs * * *. Nor can there be any doubt that where property of that character is, at a place to which lawful access has been obtained, visible to the officer, ready to be taken, that he may, upon the lawful arrest of the defendant, seize and take it into his possession."

In Sayers v. United States, (C. C. A.) 2 Fed. (2d) 146, the Circuit Court of Appeals for the Ninth Circuit used this language:

"A lawfully arrested person may be searched for instruments, fruits, and evidences of the crime; and, if taken in commission of the crime in a building, the latter may be likewise searched to the extent that the offender's control and activities likely extended. This is the law since the Fourth Amendment, even as it was law before it, is reasonable, and is not within the amendment's ban upon unreasonable searches and seizures."

And the same court in the case of Marron, et al. v. United States, (C. C. A.) 8 Fed. (2d) 251, discussing the situation where the officers had no warrant but arrested one of the defendants, Birdsall, as guilty of a misdemeanor committed in their presence, held that:

"As incident to a lawful arrest, the officer may search the prisoner and seize evidence of his guilt. (Citing many cases.)

"The property and papers of the defendant are no more sacred than his person. The right of search extends

to the premises in control of the defendant arrested, and authorizes the seizure of that which is evidentiary of the crime."

The decision last mentioned came before the Supreme Court of the United States on *certiorari* and that court, in affirming the judgment below (Marron, et al. v. United States, 275 U. S. 192, 48 Sup. Ct. Rep. 74, 72 L. Ed. decided November 21, 1927), said:

"When arrested, Birdsall was actually engaged in a conspiracy to maintain, and was actually in charge of, the premises where intoxicating liquors were being unlawfully sold. Every such place is by the National Prohibition Act declared to be a common nuisance the maintenance of which is punishable by fine, imprisonment or both. Section 21, Title 2, Act of October 28, 1919, 41 Stat. 305, 314 (U. S. C. Tit. 27, Sec. 33, (27 USCA Sec. 33). The officers were authorized to arrest for crime being committed in their presence and they lawfully arrested Birdsall. They had a right without a warrant contemporaneously to search the place in order to find and seize the things used to carry on the criminal enterprise. Agnello v. United States, 269 U. S. 20, 30, (46 S. Ct. 4); Carrol v. United States, 267 U. S. 132, 158, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Weeks v. United States, 232 U. S. 383, 392, (34 S. Ct. 341). The closet in which liquor and the ledger were found was used as a part of the saloon. And, if the ledger was not as essential to the maintenance of the establishment as were bottles, liquors and glasses, it was none the less a part of the outfit or equipment actually used to commit the offense. And, while it was not on Birdsall's person at the time of his arrest, it was in his immediate posssssion and control. The authority of officers to search and seize the things by which the nuisance was being maintained extended to all parts of the premises used for the unlawful purpose. Cf. Sayers v. United States, (C. C. A.) 2 F. (2d) 146; Kirwin v. United States, (C. C. A.) 5 F. (2d) 282; United States v. Kirschenblatt, 16 F. (2d) 202."

Under the authorities reviewed above, it is clear that the search made by the deputy sheriff, whereby the coil,

mash, liquor and other articles obtained from the shed where the still was in operation were secured and which were subsequently used in evidence, was lawful.

It follows that the trial court did not err in overruling the motion to suppress the use of these articles as evidence, and in denying the directed verdict for an acquittal.

Complaint is made that the officer was allowed to testify that the appellant said, upon being arrested, that "he could not get work in the mine and that was the only thing he could get to do." But the record shows that the statement was voluntarily made and not in response to any interrogatories propounded by the officer, or through any improper influence employed by the latter. In 16 C. J. 629, Sec. 1247, the rule is stated:

"An admission which was made voluntarily by accused may be received in evidence against him, even though it was made to an officer or while accused was under arrest or in custody."

See also the extended list of cases supporting the text in the subjoined notes. The case of Maki v. State, 18 Wyo. 481, to which our attention is directed by appellant, was an instance of an involuntary statement obtained from the accused at a coroner's inquest and hence is not in point here.

Error is assigned that the deputy sheriff was also allowed to testify upon the trial to the exclamation of the bystander: "There he goes to warn Tony." While this was hearsay, we do not consider its introduction in evidence, under the circumstances disclosed in this record, to have been reversible error. It did not impute any crime to appellant. It did not even appear before the jury who Tony was. It was not sought to establish the truth of the matter asserted, but appears as merely explanatory of the officer's conduct. As said in 16 C. J. 624, Sec. 1233:

"However, the hearsay rule excludes extra-judicial utterances only when offered as evidence of the truth of the matter asserted; it does not operate to exclude evidence offered for the mere purpose of proving the fact that a certain statement, request, or message was made, or delivered, or acted upon."

In People v. De Simone, 225 N. Y. 261, 121 N. E. 761, where a policeman testified that he started in the direction where he heard shots fired and that a wagon barred his view of the scene of action, and that somebody in the crowd cried out: "He ran over Huston Street," and that he immediately turned and looked over Huston Street and saw for the first time defendant running and he pursued him, and after reaching him found near him a pistol which was introduced in evidence, holding that the admission of this statement was not error, it was said:

"The testimony of the witness that the man running away was the defendant, and, in connection with other evidence, that the witness found the pistol near the defendant where stopped by the other officer, was material, relevant, and competent. The witness might properly and competently testify to the facts which explained and described his conduct and acts in acquiring such testimony. The hearing by him of the firing of the shots at the named point, the running and crossing of Thompson street, the obstruction by the wagon of his view towards the man running towards him, the passing over West Houston Street, the turning about and running upon West Houston Street, were such facts. In case he when running toward that street had seen the running man approach and turn upon it and had followed him, he could have so testified. In case as he was approaching that street the bystander had pointed in the direction of the fleeing man and he had followed the pointed direction, he could have so testified. The words called out, in fact, were of the same quality and nature, as evidence, as the actual hearing of the fired shots, or the seeing of the running man, or the pointed direction in the supposed cases."

See also State v. Fox, 25 N. J. Law 566.

In this connection it may not be improper to observe, that had the remark of the bystander been such as to impute a crime to appellant, or had been of similar prejudicial character as against him, it would have been the duty of the court to have confined the officer's testimony simply to a statement that he acted upon information without stating what that information was. See Schuman v. United States, 16 Fed. (2d) (C. C. A. 5th Cir.) 457; People v. Mead, 50 Mich. 228, 15 N. W. 95; Com. v. Moulton, 4 Gray 70 Mass. 39; State v. Butler, 113 Me. 1, 92 Atl. 819; State v. Alston, 28 N. Mex. 379, 212 Pac. 1031.

Finding no error in the record under review, the judgment is affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.