GASKILL *v*. THE STATE.

CRIMINAL LAW.—*Malicious Trespass.*—*Evidence.*—Where, on the trial of an indictment against A. for malicious trespass in the shooting of B.'s dog, the evidence tended to show that the dog, at the time of the shooting, was chasing A.'s sheep; that A. did not know it was B.'s dog; that soon after learning that fact A. offered to pay B. for the injury a certain sum, which was declined as being too small; and that A. was a man of good character;

*Held,* that there was no evidence of malice, and therefore there could be no conviction.

SAME.—In such cases, the distinction between trespass and malicious trespass must be carefully observed.

From the Huntington Circuit Court.

*B. M. Cobb,* for appellant.

*C. A. Buskirk,* Attorney General, and *A. Moore,* Prosecuting Attorney, for the State.

BIDDLE, J.—Indictment against Carl Gaskill, for malicious trespass, committed in shooting a dog, the property of George Chaney, to his damage, etc.

Trial and conviction. Proper ground was laid, and an appeal taken to this court.

The principal question in the case is the sufficiency of the evidence to sustain the verdict.

George Chaney testified:

" My name is George Chaney. On the 27th of April last I was along the creek, not far from defendant's land, fishing. My dog was along with us. The dog started off on a trail; he ran west; soon after heard the report of a gun and heard the dog howl. I went up to Gaskill's, where I said, ' Did you shoot my dog ?' He said he shot a dog, but thought it was Sowers' dog; that he did not know that it was my dog. ' If I had known it was your dog, I would not have shot it.' He told me he shot it with a small rifle. He said he hit the dog just where he aimed. We were talking about my dog that was shot there. The dog came howling back, and died in a few

minutes after he was shot. This was in Huntington county and State of Indiana. The dog was of the value of fifty dollars, and I was damaged that much. I told Gaskill that I was too mad to talk with him then; but if he did not come and settle with me the next day, I would sue him for damages. The next day he came and offered me five dollars damages for killing the dog." (This offer was objected to, and admitted by the court, but we decide nothing upon the point.) "The defendant did not say that the dog was chasing his sheep at the time he shot him."

Michael Chaney testified:

"I was along with father fishing, April 24th, 1876. The dog started off on a trail and ran up toward Carl Gaskill's house. He was gone twenty or thirty minutes. Heard the report of a gun, and heard the dog howl. He then came down where we were. The dog had been shot in the left flank, and the ball ranged forward. He died in fifteen or twenty minutes after he came to me. He was a black and white spotted hound dog, and was worth fifty dollars. Next day heard the defendant say to George Chaney, 'I have come over to settle with you for your dog.' He said the dog was standing when he shot him, and was looking back toward him; heard him trailing like he always did." (This offer to settle was also objected to, but we decide nothing as to this point.)

Stephen Wilson testified:

"Saw Carl Gaskill the next day after George Chaney's dog was shot. Said he had shot a dog; that if he had known it was his dog he would not have shot him. He had come to make some inquiries about the dog law; said he had seen a dog running his sheep and had shot it; said if he had known it was Chaney's dog he would not have shot it."

John Jester testified:

"Went to Carl Gaskill's house with George Chaney. Chaney asked him, 'Did you shoot my dog?' Gaskill said,

'·Was that your dog I shot at? I shot at somebody's dog, but I did not know whose it was; never saw him before.' We were talking about Chaney's dog that was shot. My dog was a black and white hound dog, three or four years old. I came up through Gaskill's field, but did not see any sheep; did not look for any. Probably, if there had been sheep there, would have seen them. Gaskill said he heard a dog running his sheep, and that he shot at him; did not know whether he hit him or not. Said the dog had hold of one of his lambs at the time he shot at him. Chaney said he would give him until to-morrow to come and settle, and if he did not do it he would sue him for damages."

Nathan Chaney testified:

"Heard dog running in Gaskill's field; heard gun report and the dog howl; did not see Gaskill. Heard defendant say he heard his sheep running in the field, and a dog after them, and he shot the dog. Did not know whose dog it was."

Here two witnesses testified to the value of the dog.

Carl Gaskill, the defendant, testified: "Was in the house, and heard a dog running my sheep; I caught up my gun and ran out about thirty steps from my house; the dog was after the sheep; I fired at him, and the dog turned around; I was north of the dog, and he was running west when I shot at him; did not know whose dog it was; did not know whether I hit it or not. That evening Mr. Chaney and John Jester came to my house, and Chaney asked me if I had shot his dog; I said, 'George, was that your dog I shot at?' He said, yes. I said to him, the dog was running after my sheep, and I shot at him; had I known it was your dog I would not have shot at him, but would have driven him off. 'Well,' he says, 'it was my dog, and I am too mad to settle to-night, and if you do not want to get into trouble you had better come down to-morrow morning and settle.' So the next evening I went and seen him; I offered him five

dollars, and he asked me fifty; at last he said he would take forty; I declined to give this, and he said he would sue me next day; he did sue me afterward. When I shot he kind o' halted; when the dog saw me coming at him he kind o' halted."

Nathan Chaney recalled. "Am acquainted with the defendant; have known him sixteen years; know his character; it is good."

"And now the State admits that the character of defendant is good. This was all the evidence given in said cause."

We are of opinion that the evidence in this case is insufficient to support a criminal conviction. It does not even tend to prove that the trespass was malicious; indeed, it seems to us that its tendency is rather to repel the presumption of malice; and unless the trespass was malicious, the prosecution can not be maintained. The distinction between trespass and malicious trespass must be carefully held; otherwise any trespass, even though committed by accident, might be a criminal offence. This is not the meaning of the statute. *Palmer* v. *The State*, 45 Ind. 388; *The State* v. *Bush*, 29 Ind. 110.

Whatever may be the rights of George Chaney and Carl Gaskill in this matter, as between themselves in a civil suit, it is clear to us, that Gaskill ought not to be punished criminally, upon the evidence before us. The question is not upon the weight of evidence; upon a material point necessary to a conviction, there is no evidence.

The judgment is reversed, and the cause remanded, with instructions to the court below to sustain the motion for a new trial, and for further proceedings.