# STATE v. COLEMAN.

## No. 1623 (82 Pac. 465).

1. ANIMALS—PROSECUTIONS FOR POISONING.—Revised Statutes 1898, section 4053, defines "malice" and "maliciously" as importing a wish to vex, annoy, or injure another person, or an intent to do a wrongful act. Section 4427 provides that every person who willfully, unlawfully, and maliciously administers any poison to an animal, the property of another, is punishable. *Held* that, though the owner of a dog poisoned by defendant was unknown to defendant, that fact did not preclude a finding that the poison was administered maliciously.[1]

2. SAME.—In a prosecution for administering poison to a dog, evidence tending to show that the dog, two weeks prior to his killing, had bitten defendant's boy, did not authorize the court to say as a matter of law that the killing was not done maliciously and only for the purpose of preventing similar attacks.

---

[1] People v. Olsen, 6 Utah 284, 22 Pac. 163.
29 Utah—27

3. SAME.—From the willful and intentional poisoning and killing of a dog belonging to another person, malice may be implied or presumed.

4. SAME.—In a prosecution for killing a dog, evidence reviewed, and *held* sufficient to have warranted the jury in finding that defendant killed the dog maliciously, and that it was error to direct a judgment for defendant.

BARTCH, C. J., dissenting.

(Decided September 2, 1905.)

APPEAL from District Court, Salt Lake County; Thos. D. Lewis, Judge.

John W. Coleman was prosecuted for violating Revised Statutes 1898, section 4427. The court directed the jury to return a verdict of not guilty, and the State appeals.

REVERSED.

*M. A. Breeden,* Attorney-General, for the State.

*Ray Van Cott* for respondent.

STRAUP, J.

1. The defendant was informed against and prosecuted for violating section 4427, Revised Statutes 1898, which is as follows:

> "Every person who willfully, unlawfully, and maliciously administers any poison to an animal, the property of another, or maliciously exposes any poisonous substance with intent that the same shall be taken or swallowed by any such animal is punishable," etc.

At the conclusion of the state's case, the court, on motion of respondent, directed the jury to return a verdict of not guilty. The state appeals.

The evidence shows that the dog, a large collie black ragland belonged to one E. W. Taylor; that he left the dog in

charge and care of E. A. Pierce and his wife. About two weeks before the killing of the dog the defendant called on Mrs. Pierce, and said to her that the dog had bitten his child, and that he wanted Mr. Pierce to kill the dog, and that, if he did not do so, he (the defendant) would. Mrs. Pierce replied that Mr. Pierce would not do so, because the dog was not his. The defendant did not ask her, and she did not tell him, to whom the dog belonged. About two weeks later the defendant came to the premises of Mr. Pierce, coaxed the dog out of the yard, and there fed him meat containing strychnine. The dog ate the meat, and soon was thrown into convulsions and died. From this evidence it is contended that, inasmuch as Mrs. Pierce told the defendant, two weeks before the killing of the dog, that it did not belong to Mr. Pierce, therefore the owner of the dog was unknown to the defendant, and therefore he had no malice against the owner, and that the sole motive for poisoning and killing the dog was because it had bitten defendant's boy and to prevent similar attacks, which, it is claimed, conclusively established a total want of malice. The trial court, adopting these views, directed a verdict of not guilty. We think the law of the case was misconceived, and that the court, in drawing the conclusions invaded the province of the jury.

2. At the outset it is conceded, and it is the law in this state, that a dog is property, within the meaning of the statute. Conceding, under the above statute, that the state must prove malice toward the owner, which is doubtful, does the fact that the owner was unknown to the defendant preclude a finding of malice toward him, if the evidence be otherwise sufficient to find that the act of administering the poison was done willfully, unlawfully, and maliciously? It seems some diversity of opinion pervails as to whether malicious mischief was an indictable offense at common law. (19 Ency. of Law, 634.) The predominating opinion, however, inclines to the view that the offense existed at common law, and that malice toward the owner or possessor of the property was essential to constitute the offense. But by statutes, both in England and in the states, the offense of malicious mischief, as it ex-

isted at common law, has been greatly enlarged. The statutory offense here is more than a mere expression of what the law of malicious mischief was at common law. It here denounces specifically a particular thing, and makes it an offense to "willfully, unlawfully, and maliciously administer any poison to an animal, the property of another," etc. By statute here, also (section 4053, Rev. St. 1898), the terms "malice" and "maliciously," used in the Penal Code, are defined as follows:

> "The terms 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or by presumption of law."

The gravamen of the offense is the doing of the act maliciously. While the authorities, under the common law and under some statutes, assert that malice toward the owner is essential to constitute the offense, yet it does not at all follow that to show such malice it must be shown that the alleged malicious act was accompanied by a vindictive and malevolent motive, actuated by malice toward the owner of the property, or actual ill will or resentment toward him. It has been quite generally held that, where the doing of an act is shown to have been unlawful and willful or wanton, malice will be presumed. A mere intent simply to injure the animal, or mere resentment or malice toward it, without malice toward any person, it may be conceded is not sufficient. But, although the owner may be unknown to the offender, if the act was done maliciously or under circumstance evincing a depraved mind and one prompt and disposed to the commission of mischief, or done willfully and unlawfully, or with that wanton and reckless disregard of all consequences and of the rights of others, and with an intent to wrongfully injure or destroy the property of another, regardless as to who may be the owner or possessor, the commission of the offense is complete. When it is so done, it necessarily follows that the offender intended to inflict an unnecessary and inexcusable injury upon, and a consequent wrong against, the owner or

possessor; and malice towards him may therefore be presumed. Especially must this be true under the statute in question, and because of the meaning given the word "maliciously" by the statute, an intent to do a wrongful act, and also as defined by lexicographers, "the doing of a wrongful act, intentionally, without just cause or excuse; a wicked and mischievous purpose which characterizes the perpetuation of the injurious act without lawful excuse." Bouvier.

The statute here in terms does not require that the offender should be actuated because of malice toward the owner. It is the doing of the act willfully, unlawfuly and maliciously that is denounced by the statute. While, as stated before, the administering of the poison with mere resentment or malice toward the animal will not suffice, still, if the act is done wilfully and unlawfully, and with intent to do a wrongful act, whereby some one will be wronged, and injury is a necessary consequence flowing from such wrongful act and mischievous intent, it will suffice. In other words, it is not so much that the malice must be toward any particular individual known to the offender, and against whom he bears a feeling of ill will and resentment; but it suffices if the act as done characterizes an intent to do a wrongful act resulting in injury to some one. Were it not so, one might willfully, unlawfully, and with an intent to do a wrongful and mischievous act, and even with an abandoned and malignant heart, and with a depraved and wicked mind bent on and disposed to the commission of all sorts of mischief and wrong, injure and destroy animals of all kinds, and defend his wrong against a criminal prosecution by showing that the owner was unknown to him, and that therefore he intended no wrong as to him and had no malice toward him, and may even be heard to assert that, when he committed the depredation, he thought and believed that the animal belonged to A., against whom he was satisfying his feeling of resentment, when in truth and in fact it belonged to B., who was his most intimate friend and kinsman, and against whom he intended no wrong and bore no malice or feeling of resentment. The term "maliciously," used in this statute, is to be con-

strued in the usual sense in which it is generally used in the criminal statutes and as it is defined by the statute above stated. No distinction is made as to its use in this statute, and as used in other statutes defining criminal offenses in the Penal Code, where malice is an ingredient of the offense. In criminal offenses, generally, where malice is an essential ingredient, it is not necessary that specific malice toward a particular individual be shown; but the showing of general malice, an intent to do a wrongful act, or an act done with a wicked and mischievous purpose necessarily and injuriously affecting some one, although it may not have been intended for the particular person affected, is all that is required. While, also, it is true that it is necessary to allege and prove ownership, either general or special, of the animal, yet this primarily is required in order to show that the animal poisoned was the property of another and was not that of the defendant, and for the purpose of identifying the offense and transaction. We conclude, therefore, though the owner of the dog was unknown to the defendant, that fact does not preclude a finding that the poison was administered maliciously within the meaning of the statute. In support of the views herein expressed we are sustained by the great weight of authorities, and among them may be noticed the following: *People v. Olsen,* 6 Utah 284, 22 Pac. 163; *State v. Phipps,* 95 Iowa 491, 64 N. W. 411; *State v. Boies* [Kan.], 74 Pac. 630; *Stone v. State,* 50 Tenn. 457; *State v. Gilligan* [R. I.], 50 Atl. 844; *State v. Linde,* 54 Iowa 139, 6 N. W. 168; *State v. Williamson,* 68 Iowa 351, 27 N. W. 259; *Mosely v. State,* 28 Ga. 190; *Brown v. State,* 26 Ohio St. 176; *Fundderburk v. State* [Miss.], 21 South. 658; *Lowery v. State,* 30 Tex. 402; *Territory v. Crozier,* 6 Dak. 8, 50 N. W. 124; *People v. Kelly* [Cal.], 22 Pac. 593; cases cited 40 L. R. A. 511, note; Ingham Law of Animals, sec. 127; Bish. Stat. Crimes, section 436; McClain, Crim. Law, sections 829, 830, 833.

3. It is further claimed that the evidence shows that the dog bit the defendant's boy, and because of that and to prevent similar attacks the defendant killed it, and that this

conclusively established that the poisoning of the dog was not malicious. Even though it be conceded that there is some evidence tending to show that the motive of the defendant in poisoning the dog was as is claimed, still it is not for the court to draw the conclusion, but it was for the jury to do so. The motive which prompted and actuated the defendant in the doing of the act involved a question of fact. Conceding, now, that there was evidence tending to show that the dog, two weeks prior to his killing, had bitten defendant's boy, and also conceding that the circumstances were such whereby the defendant had reason to believe similar attacks might be made, still it does not follow that the court was authorized as matter of law to say such was the motive which prompted the defendant in killing the dog, and therefore was authorized to direct a verdict for the defendant. As well might it be asserted where the state proved the defendant shot and killed another, but, there being some evidence which tended to show it was done in necessary self-defense, therefore the court should direct a verdict of acquittal. Whether the evidence so tending to show this appears on the part of the state, or is supplied by the defense, does not matter; for in either case it is generally for the jury to determine whether the slaying was done with malice, or because of necessary self-defense, or because of some other just cause or excuse. The law is well settled that malice may be presumed or implied from the willful or wanton doing of an unlawful act, from an intention to do a wrongful act to the detriment of another, and that the existence or nonexistence of malice is an inference to be drawn by the jury from a consideration of all the facts and circumstances in the case, and from the manner in and purpose with which the act is done. Here the poisoning and killing of the dog was unlawful. That it was done willfully and intentionally must be conceded, for it cannot be conceived that the poison was administered for any other purpose, except to kill the dog and thereby deprive the owner, whoever he may be, of the property. From the willful and intentional doing of this unlawful or wrongful act, to the detriment or injury of another, malice may be

implied or presumed. In case where malice is an essential ingredient of the offense, it is not frequent where the state is able to prove express malice. Its existence lies in the heart of the offender, and he alone knows its secrets. He is the only possible direct witness to that fact. Malice is therefore generally established and found, if at all, as an inference from every thing that is proved, taken together and considered as a whole, and implied from unlawful or wrongful acts done willfully and designedly, to the detriment or injury of another. Here the jury had the right to consider the manner in which the act was done—the fact that the defendant approached the premises of Mr. Pierce and coaxed the dog out of the yard, as well as all other facts and circumstances shown. It may be conceded that if the dog had bitten the defendant's boy, and that the defendant had reason to and did believe the dog might make similar attacks, and so believing and because thereof, such was his sole motive which prompted him to kill the dog, although the killing was not lawful, still the defendant could not have been convicted of the offense charged, and it would have been proper to so have charged the jury. But the vice of the court's ruling in directing a verdict was because he himself assumed and found that the administering of the poison and killing of the dog was from such a motive, and therefore without malice, instead of submitting such question upon proper instructions to the jury for their determination.

But, considering the facts, the evidence is not at all satisfactory that the dog had even bitten the defendant's boy, and no evidence at all of any fact or circumstance whereby the defendant, or any one, had reason to believe that similar attacks might be made by the dog, or that his boy, or any one, was at all in any kind of danger therefrom, or that the dog was at all harmful. The circumstances under which the boy was bitten, if at all, so far as disclosed by the evidence, show that the boy at the time was, and on the previous day had been, teasing and annoying the dog with a stick; and it is not at all shown that the dog was at large or at any time strayed away from the premises of Mr. Pierce, or anything what-

ever to lead or induce the defendant or any one, to believe that the dog was likely to or might attack any one, or was at all harmful. To the contrary, the evidence shows without dispute that the dog was trained, and of a kind and playful disposition, and many times for hours played in the yard and a nearby field with the children of the neighborhood, and had never harmed any one. At the time that it is claimed this boy was bitten, the evidence fairly shows he was then teasing the dog with a stick by striking at him and dodging behind a tree, and kept this up for five minutes. He·was warned not to do so. On the day previous, he kept thrusting a stick through the fence, teasing the dog when he was in the yard, at which time the boy was also then warned not to do so, as the dog might bite him. Mrs. Pierce testified that on the evening of the day that the boy had been teasing the dog the defendant came to her and said that the dog had bitten his boy, whereupon she told him she thought not, as the dog had never bitten any one. That is all the evidence in the case that the dog had bitten the boy. The defendant then demanded of her that Mr. Pierce kill the dog, and that, unless he did so, he (the defendant) would. She told him that Mr. Pierce certainly would not do so, because the dog was not his. Two weeks later the defendant and his wife crossed the field near by, found the dog in the yard, the defendant coaxed him out through the gateway, induced the dog to follow him, and then fed him the poisoned meat. His wife raised her hands before her eyes and rushed back across the field. Mrs. Pierce, who was upstairs in the house, witnessed the transaction and called to Mr. Gleason, who was in the kitchen, to call the dog back, but before he was able to do so the defendant had fed him a portion of the meat. Ten minutes afterwards the dog was thrown into convulsions, and within an hour thereafter died. The meat was subjected to chemical analysis and found to contain strychnine. From this evidence the jury would have been warranted in finding that the defendant killed the dog, not because he had any reason to believe, or that he did in fact believe, the dog might attack or injure any one, or was at all harmful, but that the

act of poisoning the dog was wholly inexcusable, and that the circumstances thereof showed a wanton and revengeful disposition on the part of the defendant.

Respondent makes some reference to the natural feeling of a father to protect his offspring, and that the law should not hold him criminally responsible "for killing a savage and ferocious dog" in so doing. We do not, nor does the law, so hold him responsible in that kind of a case. Here there is a total want of evidence that the dog was savage or ferocious, or at all mischievous or harmful, or that his boy, or any one, was, or might at all be in any kind of danger or risk from the dog. If the boy was bitten, the evidence, without dispute, shows it was occassioned by his teasing and harrassing the dog. The only witness speaking on the subject was Mrs. Pierce who putting her testimony in narrative form, but using her own language), speaking of the boy, said: "I saw him teasing the dog the day he was supposed to have been bitten. He was standing behind a tree with a stick, and coming around the tree and striking at Shep, and then dodging behind the tree, and so on. That was the same day that Mr. Coleman came to me in the evening. I saw this over in the field right north of the house. There were other children around there. I only knew him from his dress, as Mr. Coleman described him that day. The clothing and size of the boy corresponded with the boy Coleman described. I watched him teasing the dog for about five minutes. I don't know how much longer. I had warned the boy. I don't think I warned the boy at that or any previous time, but Byron Gleason, a boy working for us, did the previous day. They were teasing him through the fence during the previous day before this should have happened, and Byron told him not to do it —that he might bite him. I heard them. I heard the dog barking. I only knew what children they were from Byron's telling me who they were." On cross-examination, referring to the boy, who was then in the courtroom: "He looks very much to me like the boy. He is a little bit taller than he was then, but that was nearly two years ago. I do not know what the dog had done just prior to the time I saw the boy by the

tree with a stick in his hand. He was hitting at him with a stick, first on one side of the tree and then on the other. The boy kept on the opposite side of the tree from the dog." But, as before observed, even had there been evidence that the dog was of a savage or mischievous disposition, and was likely to or might attack defendant's children, or any one else, whether such fact was the motive prompting the defendant in killing the dog, under the circumstances, was a question for the jury. To assert that such motive was conclusive from the mere fact that the boy was bitten by the dog under the circumstances disclosed, may equally well be asserted of one who crawled under the heels of a horse and was kicked, and who two weeks thereafter went into his neighbor's barn and poisoned the horse to death, because the possessor refused to kill him.

The case should have been submitted to the jury upon proper instructions, and the court erred in not so doing. The judgment of the lower court is reversed.

McCARTY, J., concurs.

BARTCH, C. J. (dissenting).

I do not agree with the majority in their views of this case, nor with their statement of the evidence or as to what it shows. The defendant was tried upon a charge of unlawfully, willfully, and maliciously administering poison to a dog. At the trial the State introduced evidence showing that the defendant called at the residence of Mr. Pierce, where the dog was, and stated to Mrs. Pierce that it had bitten his boy badly, and requested that Mr. Pierce kill the animal or else he would kill it. Mrs. Pierce replied that Mr. Pierce would not kill it, because it was not his, but did not tell the defendant to whom the animal belonged. About two weeks later on February 7, 1903, the defendant went to Mr. Pierce's residence and administered poison, from which the dog died. The proof also discloses the owner of the animal. At the close of the State's evidence the court directed the jury to return a verdict of not guilty, upon the ground that the prosecution failed to show that the accused was actuated by mal-

ice against the owner of the dog. Thereupon the State appealed, and assigned the ruling of the court in the premises as error.

The appellant insists that malice against the animal was shown and that this constituted malice against the owner under our statute. In section 4427, Revised Statutes 1898, is prescribed a certain punishment for "every person who willfully, unlawfully and maliciously administers any poison to an animal, the property of another, or maliciously exposes any poisonous substance, with intent that the same shall be taken or swallowed by any such animal." Under these provisions of the statute malice is the gist of the action The enactment was evidently intended to protect the owner in his property against malicious trespass, as well as to punish the perpetrator of the crime denounced. Where, therefore, the poisoning is not done with malice to the owner, nor out of a malicious design to deprive the owner of his property, there is no malicious trespass which imposes a criminal liability, although there be trespass which may entail a civil liability. The distinction between trespass and malicious trespass, or such as justifies the infliction of the penalty prescribed, must be carefully maintained, or else an act done in defense of person or property upon serious provocation may nevertheless amount to a criminal offense. Such is not the intent of the statute, and hence a prosecution must fail, where the proof fails to show malice toward the owner of the property. Therefore a justification which shows a want of malice excuses the act committed, in so far as criminality is concerned. In other words, an offense is committed and is punishable as a crime, whenever the act is done, as is said by Sir William Blackstone, "either out of a spirit of wanton cruelty or black and diabolical revenge." (4 Bl. Com., 243.) It follows that an essential requisite to a valid conviction in such a case is proof of malice toward the owner. (2 Whart. Crim. Law, sec. 1068; *Commonwealth v. Williams,* 110 Mass. 401; *State v. Robinson,* 32 Am. Dec. 661; *Gaskill v. State,* 56 Ind. 550; *Northcot v. State,* 43 Ala. 330; *Hobson v. State,* 44 Ala. 380; *State v. Enslow,* 10 Iowa 115; *State v. Wilcox,* 24 Am. Dec.

569; *Wright v. State,* 30 Ga. 325, 76 Am. Dec. 656.) While, however, malice against the owner is an essential ingredient to justify a conviction, such malice may be established by direct and positive evidence, or by proof showing that the act was committed wantonly and maliciously, with a malevolent design, signifying an abandoned, depraved and malignant heart, from which malice against the owner may be inferred. Where, therefore, the circumstances show the act to have been committed with a vicious spirit, in a wanton and malicious manner, indicating a brutal instinct, express evidence of malice having previously existed in the mind of the accused toward the owner is not indispensable to bring the case within the statute; but mere proof of the fact that the accused, under circumstances showing provocation, committed the act, is not sufficient to justify an inference of malice against the owner, or to warrant a conviction, and hence does not authorize the court to submit the question of malice to the jury. In such event the injured party must be left to his civil remedy as at common law.

In the case at bar there is no direct or positive proof of malice against the owner existing in the mind of the accused either before or at the time of the commission of the act. On the contrary, the proof of the prosecution, the defendant having introduced none, shows some provocation of a justifiable character which led to the commission of the act; and I see nothing in the record to warrant the assertion that the teasing of the animal caused it to make the vicious attack. Respecting this question the statements of the witness whose evidence has been construed to this effect are quite contradictory as they appear in the record, and not such as to inspire confidence, especially upon the admission that the witness had not known the boy, but simply thought he was the one by his appearance. On this point the witness testified: "Q. Well, do you remember, before this dog was killed, of the boy going back and forth there? Do you remember of seeing him? A. No, sir. Well, I knew all of them by sight, but I pay so little attention to them I don't know one from the other. I remember of seeing a boy dressed such as he was dressed that

day." Even if the witness saw this boy behind a tree with a stick, may he not have been there through fright, and have struck at the dog for the purpose of warding off an attack of the animal? As to the character of the injury inflicted the witness testified: "Q. Mr. Coleman came to your house up-on the day which you understood was the day when the dog had bitten one of his children, didn't he? A. Yes, sir. Q. You understood that the dog had bitten one of his little boys? A. Yes, sir. Q. He told you that, didn't he, when he came, Mrs. Pierce? A. Yes, sir. Q. And he told you, did he not, that the dog had bitten his little boy in the calf of the leg? A. Yes, sir. Q. Inflicting a very severe wound? A. He said he was bitten badly. Q. He told you that the dog had sent his teeth to the bone of the boy's leg? A. No, he didn't tell me it went to the bone. He said he had bitten him badly."

Thus it appears from the evidence that the child had been "badly bitten;" that thereupon the accused requested that the animal be killed; that his request was denied, and the dog per-mitted to remain at large; that under these circumstances the accused administered the poison, not knowing who was the owner of the animal. Such evidence utterly fails to indicate any diabolical design on the part of accused to injure the own-er, and, in my judgment, does not warrant a conviction. At most, it shows but a determination of the father to save his child from further attack by the animal. That a father may protect his child from attacks of such an animal in good faith, it seems, ought not be denied. Nor was the statute in-tended to inhibit such protection. So long as the bond of af-fection planted in human hearts by our Creator exists be-tween the parent and child so long will the former, out of love for his offspring, if within his power, prevent harm to the latter from vicious animals; and it is not in accord with any principle of natural justice to denounce such protection as a crime. Nor do the principles hereinbefore considered militate against the correctness of the decision in *People v. Olsen*, 6 Utah 284, 22 Pac. 163. In that case the offense was committed not only in a cruel, wanton and malicious manner,

but the circumstances signified a depraved spirit and an utter disregard of the rights of the owner as to an inoffensive animal, without provocation or any justification. This appears from the opinion in that case, where it says:

> "The evidence, which is all set out in the record, shows that the defendant and Larsen were driving past the premises of Britton in a wagon having a gun in the wagon, and, when near Britton's house, the one not engaged in driving the team picked up the gun and discharged it at the pig, which was running at large, wounding and maiming it; that one of them immediately after the shooting shouted 'Skedaddle!' and the one who was driving the team drove rapidly away."

From the foregoing considerations, I am of the opinion that the court was justified in directing the jury to return a verdict of not guilty in this case, thus leaving the owner of the animal to his civil remedy, and therefore dissent.