COMMONWEALTH *vs.* DAVID HOSMAN & another.

Middlesex.    September 16, 1926. — November 3, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Malicious Injury to Personal Property.   Practice, Criminal,* Exceptions.
  *Evidence,* Matter of common knowledge, Of value.   *Jury and Jurors.*

At the trial of an indictment charging the defendant with being accessory
  before the fact to malicious injury to personal property, there was
  evidence that an employee of the defendant, driving an automobile for
  the purpose of illegally transporting intoxicating liquor, deliberately
  drove into automobiles which police officers had caused to block his
  way, and injured them; that the defendant had instructed his driver,
  "Regardless of who the police were . . . not to stop for no one, and if
  they come in . . . [his] way, to crash through them if it was needed";
  and that the driver was carrying out his instructions.   The judge
  charged the jury that the Commonwealth must prove something more
  than a deliberate intent to do a wrong; that they must be satisfied that
  the act was something more than a deliberate act; "it must have been
  done through a sense of hostility or of ill will or of wanton cruelty";
  and, subject to exceptions by the defendant, further instructed them
  "that it would be sufficient if they found that instructions were given
  . . . if the malicious injury was done intentionally and deliberately,
  out of a spirit of hostility, of ill will toward the occupants, and that
  the instructions were followed out"; and that if the instructions to the
  driver as to the police were given and "he believed that the police
  automobiles were there and that he went through them, if they found
  a spirit of hostility to all police automobiles, that would be sufficient."
  The defendant was found guilty.   *Held,* that
      (1) The act of the defendant's driver in following out the defendant's
  instructions was wilful and malicious within the meaning of G. L.
  c. 266, § 127;
      (2) It was not essential for the conviction of the defendant that the
  driver should know who owned the automobiles into which he drove
  or that he should have been actuated by a spirit of personal hostility
  toward the owners of those automobiles;
      (3) The instructions to the jury were proper;
      (4) A finding that the defendant was guilty of being an accessory
  before the fact to wilful and malicious injury to personal property on the
  part of the driver was warranted.
Instructions to the jury at the trial of the indictment above described,
  that they were not entitled to infer from what the defendant's driver
  did that he did it in accordance with instructions from the defendant,
  and that they were not to find the defendant guilty unless they were

satisfied, first, that the driver "did it; and, second, that he did it in accordance with specific instructions, that those were his instructions from" the defendant, disclosed no error.

The indictment above described charged that the defendant was accessory before the fact to malicious injury to two automobiles each "to the value of more than $100." The evidence showed that the automobiles were a "Dodge sedan" and "another Dodge car," and that they were being operated at the time of the collision with the car driven by the defendant's driver. The sufficiency of the indictment was not questioned and no question as to proof of the value of the automobiles was raised at the trial. The defendant was sentenced to State prison for a term of not less than three nor more than five years. The defendant excepted and contended that, as no evidence of the value of the cars was introduced at the trial, and as the value was not testified to until the defendant was sentenced, there was a "failure of proof or a material variance." *Held,* that

(1) Even if it be assumed that such contention was open to the defendant on the record, it was a matter of common knowledge that, to be driven, the automobile must have been worth more than $15;

(2) There was no error in the sentence.

It is not error for a judge, presiding at a trial of an indictment, upon the venire in his session being exhausted by challenges of jurors, to call jurors from another session where, the day before, the judge there presiding, in relation to contempt proceedings being heard as to an "alleged tampering with a government witness," had made remarks relating to the necessity of "Every man, woman and child in the community" joining in an effort to punish crime.

INDICTMENT in two counts, found and returned on November 3, 1925, charging David Hosman, Aaron (otherwise known as Harry) Hosman, and Simon Adelberg, in the first count with being accessories before the fact to malicious injury to personal property of the value of more than $100, and in the second count of being accessories after the fact to that crime.

In the Superior Court, all the defendants pleaded not guilty. The indictment was tried before *Flynn,* J. The venire of jurors in the session over which *Flynn,* J., presided having been exhausted by challenges, jurors were called from another session in the same court house presided over by *Dubuque,* J. The defendants excepted to such calling from the other session, stating as the grounds of their exception, "that in the matter of contempt proceedings against Ernest Richie, heard by *Dubuque,* J., in the second session, upon the previous day, in the course of a contempt

proceeding in the second session, growing out of an alleged tampering with a government witness testifying before a jury of that session which had acquitted three other defendants, *Dubuque,* J., had stated in open court to counsel upon the question of sentence, but in the presence of some of the jurors of that venire the following:

"'I haven't any doubt that that man was held up, and I haven't any doubt that he was held up by the three men who were acquitted.

"'Whatever view the jury may have taken, there is something to be said against the proposition that they don't like to convict on the testimony of one man, but what are you going to do for the protection of society?  I should say to every one of the jurors, let them go through the experience of officer Hall just once, and they will change their minds.

"'Well, we are not going to be over-run by bandits.  We must stand up like men in our boots, and consider facts and not be bamboozled by false alibis or by any other sort of proposition to defeat the ends of justice.

"'Judges have to select as to who is telling the truth and who isn't.  Unpunished crime is an encouragement to crime, and men are *particeps criminis* who don't do their duty in carrying out the law as it should be.  I would be derelict in my duty if I didn't say just what I have said, and I do it in the interest of the community and for the enlightenment of those who haven't had the experience that I have had, now going on fifty years at the bar and on the bench.

"'We can't lie down and let pirates and bandits control.  Where is your security, where is your safety, then?  Every man, woman and child in the community is interested in helping to maintain the safety and security of the community, and unless we all put our shoulders to the wheel, judges, jurors, district attorneys, police officers and citizens in general, we are going to be overrun by profligates, by bandits and by pirates.  If you want to return to the jungle and go back to anarchy and paganism as it was formerly, where life was not secure, then go on and wink at crime and not punish it.'"

At the trial, Adelberg retracted his plea of not guilty and

pleaded guilty, and as to him the indictment was withdrawn from the jury.

Material evidence at the trial is described in the opinion.

By order of the judge, a verdict of not guilty was ordered on the second count. The defendants David and Aaron Hosman were found guilty on the first count. By order of the judge, the case against Aaron Hosman was placed on file. David Hosman was sentenced to imprisonment in the State prison for a period of not less than three years nor more than five years. The defendants David and Aaron Hosman alleged exceptions.

The case was submitted on briefs.

*J. P. Feeney & T. H. Mahony*, for the defendants.

*A. K. Reading*, District Attorney, *& R. T. Bushnell*, Assistant District Attorney, for the Commonwealth.

CARROLL, J. The defendant David Hosman was found guilty of being an accessory before the fact of the offence of malicious injury to personal property. The indictment alleged that Lawrence Lavan did wilfully and maliciously injure personal property, to wit, one automobile to the value of more than $100 of the property of Mary C. Breen and one automobile to the value of more than $100 of the property of Annie M. Normile; and that Hosman, before the felony was committed, did incite, procure, aid, counsel, hire and command the said felony the defendant to do and commit.

There was evidence that Lavan was employed by David Hosman and two others to run an automobile for them, from towns in southern Massachusetts and Rhode Island to Cambridge and Chelsea, carrying alcohol. He testified that he made four or five trips a week and was paid $50 each week by the defendant David Hosman; that he was instructed, "Regardless of who the police were . . . not to stop for no one, and if they come in . . . [his] way, to crash through them if it was needed." He further testified as follows: He left Newport, Rhode Island, on the morning of May 3, 1925, with forty-two cases of alcohol in the automobile, and drove through Cambridge on the way to Chelsea; "I was coming down Brookline Street and I seen a car coming out on the right, on Brookline Street . . . I seen this car coming out and

headed clear across the street, and then I noticed a car coming from the other side, both headed for each other." He saw the police officer, Normile, in uniform, although he did not know "who he was then." Normile commanded him to halt "in the name of the law." He saw both cars and "I crashed right through their cars." He did this because "I was given instructions to crash through, and I carried my instructions out." He testified in cross-examination that he was present with the defendant and others at a conversation in the defendant's home, and was told there were police and State troopers on the road; that "When you are traveling over the road and you see them coming for you, don't stop for them, because you can't fix them up, and if they get in your way, you go for them, and if it is necessary to smash cars, smash cars, but keep going;" that he was going at the rate of forty-five or fifty miles an hour; that he tried to go between the two cars, and in answer to the question, "You thought you might possibly skin through?" answered, "Yes, I did," and "had no idea to hurt anybody in those cars." On redirect examination he testified, "My intentions were if I couldn't get through them, to smash the cars, and if there was anybody in the way, they were to go with the cars."

There was evidence that as Lavan approached the corner of Auburn Street in Cambridge, "upon a given signal" a "Dodge sedan" drove out of Auburn Street partly across Brookline Street; at the same time "another Dodge car" was driven from Auburn Street on the other side of Brookline Street, so as to meet the Dodge sedan; that Officer Normile, wearing his police uniform, signalled Lavan to stop; that the purpose of the arrangement was to stop Lavan who was suspected of illegally transporting liquor; that Lavan did not stop, but drove directly into the two Dodge cars and greatly damaged them.

The defendants' motion for a directed verdict was denied. There were no requests for instructions to the jury. The jury returned a verdict of guilty. The defendants excepted "to that part of the charge . . . that it would be sufficient if they found that instructions were given . . . if the malicious injury was done intentionally and deliberately, out of a spirit

of hostility, of ill will toward the occupants, and that the instructions were followed out"; and that if the instructions to Lavan as to the police were given and "he believed that the police automobiles were there and that he went through them, if they found a spirit of hostility to all police automobiles, that would be sufficient."

G. L. c. 266, § 127, under which the defendants were indicted, makes it a crime wilfully and maliciously to destroy or injure the personal property of another. The judge fully instructed the jury on this branch of the case. They were told that the Commonwealth must prove something more than a deliberate intent to do a wrong; that they must be satisfied that the act was something more than a deliberate act; "it must have been done through a sense of hostility or of ill will or of wanton cruelty."

The defendants were engaged in the illegal transportation of intoxicating liquor. They were seeking to evade the law in carrying out this purpose. They instructed their employee, if the property of others stood in the way, to injure or destroy it, in order that they might succeed in the commission of the crime. This advice to Lavan amounted to an instruction to run down all automobiles barring his progress. Such an act would be manifestly injurious. It was to be done, if necessary, with a reckless disregard of the rights of others, heedless of the consequences, and without lawful excuse. The defendants must have known that if their agent followed their instructions it would result in injury or destruction to the property of others, without right. Such an act is wilful and malicious within the meaning of the statute. See *Commonwealth* v. *Byard,* 200 Mass. 175, 177, 178.

It was not essential that Lavan should know who owned the Dodge automobiles, or that he should have been actuated by a spirit of personal hostility to the owners of these automobiles. It was enough that he intended wilfully and maliciously to destroy the property of another, whoever he might be. The owner of the property may not be known to a defendant, but if the property of such an owner is wilfully and maliciously destroyed, the defendant may be found

guilty under the statute. Lavan was instructed to smash the cars if necessary, "if there was anybody in the way, they were to go with the cars." Such a spirit of hostility and ill will against the property and person of anyone, whoever he was, if he stood in the way, or barred the progress of Lavan, was wilful and malicious. See *Freeman* v. *United Fruit Co.* 223 Mass. 300; *Commonwealth* v. *Goodwin,* 122 Mass. 19, 35, 36; *Commonwealth* v. *Williams,* 110 Mass. 401; *Commonwealth* v. *Brooks,* 9 Gray, 299, 303; *McIntyre* v. *Kavanaugh,* 242 U. S. 138, 141. See also in this connection, *People* v. *Jones,* 241 Ill. 482, 487. *State* v. *Coleman,* 29 Utah, 417.

The defendants excepted to that part of the charge, "the jury might find, as bearing upon the question of accessory before the fact, that Lavan did it in accordance with specific instructions given." The jury were in fact instructed: "you are not entitled to infer, from what Lavan did, that he did it in accordance with instructions. You are not to find the defendants guilty of this charge unless you are satisfied, first, that he [Lavan] did it; and, second, that he did it in accordance with specific instructions, that those were his instructions from either or both of the defendants." There was no error in these instructions, and this exception to the charge is overruled.

G. L. c. 266, § 127, enacts that for the wilful and malicious destruction of personal property, the defendant may be sentenced to State prison and "if the value of the property so destroyed or injured is not alleged to exceed fifteen dollars, the punishment shall be a fine of not more than fifteen dollars or imprisonment for not more than one month." The indictment stated that each of the Dodge cars exceeded in value the sum of $100. The defendant contends that as no evidence of the value of these cars was introduced at the trial, and as the value was not testified to until the defendant was sentenced, there was a "failure of proof or a material variance." We do not find that this specific question was called to the attention of the judge or raised at the trial. The sufficiency of the indictment was not questioned; but even if it be assumed that this point is now open to the defendant, and assuming that the Commonwealth must

show that the property was in value in excess of $15, see *Commonwealth* v. *Cox*, 7 Allen, 577, it appeared that each of the Dodge cars was in condition to be operated before the collision. As a matter of common experience a jury could find that each of the cars was worth more than $15. See *Bradford* v. *Cunard Steamship Co.* 147 Mass. 55, 57. *Commonwealth* v. *Richmond*, 207 Mass. 240, 244.

It appeared that the venire of jurors called for the session in which the case was to be tried became exhausted. Thereupon jurors summoned in the second session were called. The defendants excepted to the calling of any jurors from the second session, because of certain remarks made by the presiding judge in that session in open court in the matter of contempt proceedings against one Richie. The record discloses no error or prejudice to the defendants' rights in calling upon these jurors to serve. *Commonwealth* v. *Capland*, 254 Mass. 555.

There was no error in imposing sentence upon the defendant David Hosman to State prison. The indictment was not objected to. The value of each automobile was alleged to be in excess of $100. The jury could have found this to be true, and when sentence was imposed there was evidence that each of the Dodge cars was worth something over $200.

There was sufficient evidence to prove the guilt of the defendant. The motion for a directed verdict was denied properly.

*Exceptions overruled.*