NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12254

COMMONWEALTH  vs.  KEVIN A. MAURICIO.


Bristol.     April 4, 2017. - August 14, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd, &
Cypher, JJ.


Firearms.  Receiving Stolen Goods.  Constitutional Law, Search
and seizure.  Search and Seizure, Search incident to lawful
arrest, Inventory, Fruits of illegal search.



Complaint received and sworn to in the Taunton Division of
the District Court Department on July 10, 2014.

A pretrial motion to suppress evidence was heard by Thomas
L. Finigan, J., and the case was tried before him.

The Supreme Judicial Court granted an application for
direct appellate review.


Mathew B. Zindroski for the defendant.
Stephen C. Nadeau, Jr., Assistant District Attorney (Shawn
Guilderson, Assistant District Attorney, also present) for the
Commonwealth.


HINES, J.  After a jury trial in the Taunton Division of

the District Court Department, the defendant, Kevin A. Mauricio,

was convicted of carrying a firearm without a license, in

violation of G. L. c. 269, § 10 (a); and receiving stolen property with a value in excess of $250, in violation of G. L. c. 266, § 60.  The charges stem from a search of the defendant's backpack after he was arrested for possession of a controlled substance and breaking and entering a residence in Taunton.  During the course of the search, the police discovered a digital camera, a ring, and other items.  The firearm conviction was based on images retrieved after a warrantless search of the digital camera.  The images depicted the defendant next to firearms later determined to have been stolen.  The receiving stolen property conviction was based on the ring discovered in the defendant's backpack.

The defendant appealed from the convictions, arguing that the judge erred in denying the motion to suppress the images discovered as the result of the warrantless search of the digital camera, and that the evidence offered at trial was insufficient to sustain the conviction of receiving stolen property with a value in excess of $250.  We granted the defendant's application for direct appellate review, and conclude that the warrantless search of the digital camera constituted neither a valid search incident to arrest nor a valid inventory search.  Accordingly, the images discovered in the unlawful search should have been suppressed.  We conclude further that, although the evidence was insufficient to sustain

the conviction of receiving stolen property with a value in excess of $250, a conviction of the lesser included offense must stand.

Background. We summarize the judge's findings of fact on the motion to suppress the images, supplementing where appropriate with uncontroverted testimony from the suppression hearing. Commonwealth v. Melo, 472 Mass. 278, 286 (2015). We reserve for later the recitation of the facts germane to the defendant's argument that the evidence presented at trial was insufficient to sustain the conviction of receiving stolen property.

On May 28, 2014, Taunton police Officer Brett Collins received a report that two "suspicious parties" were seen running out of the side door of a residence on Downing Drive in Taunton. According to the neighbor who called in the report, one of the individuals was a man wearing a dark hooded sweatshirt and red gloves and carrying a backpack. The second person, a female, was wearing a gray sweatshirt.

Shortly thereafter, Collins located two individuals nearby largely matching the neighbor's descriptions. The man was identified as the defendant. Following a brief conversation, Collins pat frisked the defendant and searched his backpack. Inside the backpack, Collins found various items, including the digital camera at issue, jewelry, hypodermic needles,

prescription medications, and coins. Collins then drove the defendant back to Downing Drive, where the neighbor who made the report identified the defendant as the man he saw running from another residence on the street. The police arrested the defendant.

At the police station, Detective Dora Treacy, the evidence officer for the Taunton police department, conducted an inventory search of the defendant's backpack. Believing the camera to have been stolen, Treacy, in the course of her inventory search, turned the camera on and viewed the digital images it contained in the hope of identifying its "true" owner. In doing so, Treacy came across an image of a man with firearms. Because Treacy knew a fellow detective, Michael Bonenfant, had been investigating a housebreak on Plain Street in Taunton where two firearms and jewelry had been reported stolen, Treacy showed Bonenfant the digital images.

Bonenfant, suspecting that the firearms in the digital images matched the firearms stolen from the Plain Street residence, contacted the homeowner and showed him a printed photograph of one of the digital images. After viewing the photograph, the homeowner confirmed that the firearms and the other items in the photograph were taken from his home during the break-in.

Discussion. 1. Motion to suppress. The defendant filed two motions to suppress, both of which were ultimately denied. In his first motion, the defendant sought to suppress "all physical evidence and any alleged statements obtained by law enforcement authorities as a result of a search and seizure by the Taunton [p]olice [d]epartment." Initially, the motion judge, who also decided the defendant's subsequent motion to suppress, granted the defendant's motion, concluding that the backpack search constituted neither a valid search incident to arrest nor a valid patfrisk for weapons. The judge explained that, at the time of the search, the defendant was "detained upon specific articulable facts that he might be responsible for a housebreak," but that the defendant was not under arrest and, therefore, the search of the backpack by Collins could not be justified as a search incident to arrest. Nor could it be justified as part of a patfrisk for weapons, because Collins lacked specific facts warranting a reasonable person to believe that he was in danger. Based on these conclusions, the judge granted the defendant's first motion to suppress.

Thereafter, the Commonwealth filed a motion for reconsideration of the judge's ruling on this first motion to suppress, arguing that because the contents of the backpack would have been discovered during a later search incident to arrest, they are admissible under the "inevitable discovery"

exception to the exclusionary rule.  Persuaded by the Commonwealth's argument, the motion judge granted the motion for reconsideration and denied the motion to suppress.  Accordingly, the Commonwealth could introduce all the items in the backpack at trial.  Because this ruling did not specifically address the search of the digital camera, the defendant filed a second motion to suppress focusing exclusively on that issue.  The judge denied the motion on the ground that the viewing of the digital images was part of a valid inventory search.

On appeal, the defendant argues that the judge wrongly denied the motion to suppress the images recovered from the warrantless search of the digital camera because the search did not fall within the purview of the search incident to arrest exception to the warrant requirement and exceeded the scope of a valid inventory search.  We agree.

a.  Standard of review.  In evaluating the grant or denial of a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given oral testimony presented at the motion hearing." Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).  However, "[w]e review independently the application of constitutional principles to the facts found."  Id.  Our inquiry, therefore, is whether the search of the digital camera was proper on either of

the grounds on which the judge relied in denying the motion to suppress.

b. <u>Search incident to arrest</u>.  The judge denied the defendant's first motion to suppress the search of his backpack, agreeing with the Commonwealth's position on the motion for reconsideration that the items in the backpack inevitably would have been discovered as part of a search incident to a lawful arrest for breaking and entering.  On appeal, the defendant does not challenge the search of the backpack.  Instead, he argues that the search of the digital camera cannot be justified on this ground.  Specifically, the defendant argues that the principles underlying <u>Riley</u> v. <u>California</u>, 134 S. Ct. 2473 (2014), which foreclosed the application of the search incident to arrest exception to cellular telephones (cell phones), also forecloses the application of this exception to warrantless searches of digital cameras under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.  The Commonwealth counters that <u>Riley</u> does not apply because digital cameras, lacking the ability to function as computers, are not analogous to cell phones for Fourth Amendment purposes.  We decline to address the constitutionality of the search of the digital camera on Fourth Amendment grounds, but we apply the reasoning in <u>Riley</u> in holding that the search of the camera violated art. 14.

A search incident to a custodial arrest is well established as an exception to the warrant requirement under both the Fourth Amendment and art. 14. See United States v. Edwards, 415 U.S. 800, 802 (1974), and cases cited; Commonwealth v. Santiago, 410 Mass. 737, 742-743 (1991), and cases cited. Under both Fourth Amendment and art. 14 jurisprudence, the purpose of the search incident to arrest exception is twofold: (1) to prevent the destruction or concealing of evidence of the crime for which the police have probable cause to arrest; and (2) to strip the arrestee of weapons that could be used to resist arrest or facilitate escape. See Chimel v. California, 395 U.S. 752, 762-763 (1969); Santiago, supra at 743.

In recent years, the United States Supreme Court has grappled with defining the contours of the search incident to arrest exception in our increasingly digital world. In Riley, 134 S. Ct. at 2494, the Supreme Court addressed whether the search incident to arrest exception to the warrant requirement applies to cell phones, and concluded that it does not. In reaching this conclusion, the Court reasoned that applying the search incident to arrest doctrine to the search of digital data serves neither of the two justifications announced in Chimel, 395 U.S. at 762-763: "harm to officers and destruction of evidence." Riley, supra at 2484-2485.

This reasoning presents a compelling basis to exclude digital cameras from the reach of the search incident to a lawful arrest exception to the warrant requirement.  Like the cell phone, the twin threats of "harm to officers and destruction of evidence" are not present with regard to the data on a digital camera.  See id.  Once the camera has been secured and potential threats eliminated, "data on the [camera] can endanger no one."  Id. at 2485 (officers free to "examine the physical aspects of a phone to ensure that it will not be used as a weapon" [emphasis supplied]).  Likewise, the risk of destruction of incriminating data is also mitigated once the camera has been secured.  Although the concern regarding the destruction of cell phone data via remote wiping and data encryption was considered and rejected by the Supreme Court, see id. at 2486, this issue poses even less of a risk with respect to digital cameras, which, like the camera at issue here, may lack Internet or network connectivity.

Also, like cell phones, digital cameras "place vast quantities of personal information literally in the hands of individuals."  Id. at 2485.  See Schlossberg v. Solesbee, 844 F. Supp. 2d 1165, 1170 (D. Or. 2012) (noting that "[e]lectronic devices such as . . . digital camera[s] hold large amounts of private information, entitling them to a higher standard of privacy").  But see United States v. Miller, 34 F. Supp. 3d 695,

699-700 (E.D. Mich. 2014) (suggesting cameras do not implicate same privacy concerns as cell phones because cameras do not "boast the extensive amount of personal information commonly present in cell phones").  Although digital cameras do not allow storage of information as diverse and far ranging as a cell phone, they nevertheless possess the capacity to store enormous quantities of photograph and often video recordings, dating over periods of months and even years, which can reveal intimate details of an individual's life.  As the United States Supreme Court aptly recognized, "an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet," Riley, 134 S. Ct. at 2489, and "the fact that a search in the pre-digital era could have turned up a photograph or two in a wallet does not justify a search of thousands of photos in a digital gallery."  Id. at 2493.

While this logic supports the applicability of Riley to digital cameras, the Supreme Court has not yet determined whether the Fourth Amendment permits warrantless searches of digital cameras as a search incident to a lawful arrest.[1]  Thus,

---

[1] Following the United States Supreme Court's decision in Riley v. California, 134 S. Ct. 2473 (2014), no Federal Courts of Appeals and only three Federal District Courts have decided the issue.  See, e.g., United States v. Miller, 34 F. Supp. 3d

we hesitate to extend the holding in Riley under the Fourth Amendment to digital cameras when the Supreme Court has not yet done so.  Instead, we decide the issue based on our State Constitution, bearing in mind that "art. 14 . . . does, or may, afford more substantive protection to individuals than that which prevails under the Constitution of the United States." Commonwealth v. Blood, 400 Mass. 61, 68 n.9 (1987).  We hold, for the same reasons articulated by the Supreme Court in Riley and as set forth above, that digital cameras may be seized incident to arrest, but that the search of data contained in digital cameras falls outside the scope of the search incident to arrest exception to the warrant requirement.  See Commonwealth v. Madera, 402 Mass. 156, 160 (1988) ("We have excluded evidence under art. 14 without regard to whether the

---

695, 700 (E.D. Mich. 2014) (noting, without deciding whether Riley extends to digital cameras, that cameras do not implicate same privacy concerns as cell phones because cameras "contain a limited type of data . . . that do not touch the breadth or depth of information that a cell phone's data offers"); United States vs. Whiteside, U.S. Dist. Ct., No. 13 Cr. 576 (S.D.N.Y. June 29, 2015) (concluding that "Supreme Court's grant of protection to a device with the capacity to store a vast number of images directly applies to search of [defendant's] digital camera"); American News & Info. Servs., Inc. vs. Gore, U.S. Dist. Ct., No. 12-CV-2186 BEN (S.D. Cal. Sept. 17, 2014) (dismissing plaintiff's Fourth Amendment unlawful search claim on qualified immunity grounds, where it is open question whether Riley applies to video cameras, but acknowledging that "[t]here are qualities associated with cell phones, significant in the court's analysis, that are both similar to and different from cameras").

evidence was inadmissible under [the] Fourth Amendment . . .").[2] Indeed, with the twin threats justifying the search incident to arrest exception mitigated here because the camera was secure in the custody of the police, the officers had ample opportunity to obtain a search warrant.

The Commonwealth argues that because the defendant failed to establish that he owned, and thus had a reasonable expectation of privacy in, the digital camera, he has no standing to challenge the search. The Commonwealth, however, failed to raise this issue in the proceedings below. As a result, the merits of the issue were never meaningfully addressed during the motion to suppress hearing, and the motion judge made only the single factual finding that the camera "may or may not have been owned by the defendant." Because the Commonwealth failed to raise the issue below, it is waived. Therefore, we decline to address the merits of the issue here. See Steagald v. United States, 451 U.S. 204, 209 (1981) (government may forfeit argument that defendant lacks reasonable expectation of privacy in area searched where issue not raised "in a timely fashion during the litigation"). See also

---

[2] General Laws c. 276, § 1, which codifies the search incident to arrest exception, and which we have recognized, "is more restrictive than the Fourth Amendment," Commonwealth v. Blevines, 438 Mass. 604, 607 (2003), quoting Commonwealth v. Blevines, 54 Mass. App. Ct. 89, 93 (2002). Where we suppress the search of the digital camera under art. 14, we need not address whether suppression would also be required under § 1.

Commonwealth v. Lawson, 79 Mass. App. Ct. 322, 327 (2011), overruled on other grounds by Commonwealth v. Campbell, 475 Mass. 611 (2016) ("Whether a defendant has a reasonable expectation of privacy may not be challenged for the first time on appeal by the Commonwealth . . ."); Commonwealth v. Martinez, 74 Mass. App. Ct. 240, 249-250 (2009) (same).

Furthermore, we decline the Commonwealth's invitation to apply the doctrine that allows an appellate court "to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997). Aside from the motion judge's single finding that the camera "may or may not have been owned by the defendant," the record is devoid of factual findings supporting the Commonwealth's argument. Although we have determined that "if the facts found by the judge support an alternative legal theory, a reviewing court is free to rely on an alternative legal theory," id., no such facts were found here.

c. Inventory search. The motion judge ruled, on the defendant's second motion to suppress the warrantless search of the digital camera, that the search constituted a valid inventory search. The defendant claims error in this ruling, arguing that the search was investigatory in nature and,

therefore, outside the scope of the inventory search exception to the warrant requirement.

Our cases have determined that "the police, without a warrant, but pursuant to standard written procedures, may inventory and retain in custody all items on [a] person [to be placed in a cell], including even those within a container." Commonwealth v. Vuthy Seng, 436 Mass. 537, 550, cert. denied, 537 U.S. 942 (2002), and cases cited.  The exception is predicated on the need to "safeguard the defendant's property, protect the police against later claims of theft or lost property, and keep weapons and contraband from the prison population."  Id. at 550-551.  Thus, an inventory search is not intended to be investigatory or an occasion for police to "hunt for information by sifting and reading materials taken from an arrestee which do not so declare themselves."  Id. at 553, quoting Commonwealth v. Sullo, 26 Mass. App. Ct. 766, 770 (1989).

Applying these principles, we conclude that the search of the digital camera exceeded the bounds of the inventory search exception to the warrant requirement because it was investigatory in nature.  The investigative purpose is established by the judge's finding that Treacy, suspecting that the camera was stolen, took steps to investigate its ownership by activating the camera and viewing the stored images.  The

Commonwealth argues that Treacy's "sole objective was to identify its true owner." But this objective confirms rather than refutes the conclusion that the examination of the digital camera was an investigatory search rather a benign inventory of the contents of the backpack. Treacy's objective is founded on the assumption that the camera was stolen. Indeed, during the motion hearing, before explaining that she viewed the camera's stored images, Treacy pointed out that the camera "came in as -- with a bunch of stolen property." Treacy also explained that while she does not usually go through an individual's electronic property, the camera "was stolen property."

Given these facts, we cannot conclude that Treacy's conduct was "noninvestigatory." See Vuthy Seng, 436 Mass. at 552-554. See also Commonwealth v. White, 469 Mass. 96, 101-102 (2014) (officer's examination of pills seized from unlabeled pill container found during inventory of defendant's vehicle exceeded parameters of inventory search exception where officer examined pills "solely for an investigative rather than an inventory purpose"). Therefore, the search exceeded the scope of and was inconsistent with the purposes underlying the inventory search exception to the warrant requirement, and is thus at odds with our law. See Vuthy Seng, supra at 554, quoting Sullo, 26 Mass. App. Ct. at 772 ("In making an inventory . . . the police are to act more or less mechanically, according to a set routine, for

to allow then a range of discretion in going about a warrantless search would be to invite conduct which by design or otherwise would subvert constitutional requirements").

Because the Commonwealth has failed to show that the warrantless search of the digital camera fell within one of the "'permissible exceptions' to the warrant requirement," Commonwealth v. White, 475 Mass. 583, 588 (2016), quoting Commonwealth v. Craan, 469 Mass. 24, 28 (2014), the search was unreasonable and, thus, art. 14 requires the exclusion of evidence seized during the search.  Accordingly, the denial of the defendant's motion to suppress the images found on the digital camera was error.

     d.  Suppression of the ring.  The defendant contends that the ring should also be suppressed as fruit of the poisonous tree.  "The 'fruit of the poisonous tree' doctrine . . . has been applied to evidence derived from violations of both the Fourth and Fifth Amendments to the United States Constitution" (citation omitted).  Commonwealth v. Damiano, 444 Mass. 444, 453 (2005).  Unlike in the cases relied on by the defendant, here the police did not discover the ring as either a direct or indirect result of unlawful conduct.  Compare Wong Sun v. United States, 371 U.S. 471, 484, 487-488 (1963) (excluding narcotics seized from another individual where they were discovered only as result of statements made by defendant following police

officers' unlawful entry into defendant's home and unlawful arrest of defendant).

Nevertheless, the defendant argues that the fruit of the poisonous tree doctrine should be applied because, but for the investigation stemming from the unlawful search of the camera, the police never would have learned the significance of the ring -- that it was stolen. We disagree. Where the connection between the ring and the illegality -- the unlawful search of the camera -- is so tenuous, the application of the fruit of the poisonous tree doctrine would risk untethering it from its underlying principles. See Damiano, 444 Mass. at 453-454 ("[I]nfection will be held to have occurred when the illegality of the police behavior is sufficiently grave and the connection between the illegality and [the evidence discovered] is sufficiently intimate").

2. Sufficiency of the evidence. The defendant last argues that the judge erred in denying his motion for a required finding of not guilty of receiving stolen property with a value in excess of $250, where the Commonwealth failed to present sufficient evidence of the value of the ring. To review a claim of sufficiency of the evidence we ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original).

Commonwealth v. St. Hilaire, 470 Mass. 338, 343 (2015), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). In determining the sufficiency of the evidence, we consider "the evidence in its entirety, including, not excluding, that admitted [at] trial but found inadmissible on appeal." Commonwealth v. DiBenedetto, 414 Mass. 37, 46 (1992), quoting Glisson v. Georgia, 192 Ga. App. 409, 410 (1989).

To obtain a conviction of receiving stolen property, the Commonwealth must prove beyond a reasonable doubt that the defendant (1) bought, received, or aided in the concealment of property that was stolen or embezzled; and (2) knew the property had been stolen. Commonwealth v. Yourawski, 384 Mass. 386, 387 (1981). Under G. L. c. 266, § 60, the "value of the property stolen determines the punishable offense." Commonwealth v. Tracy, 27 Mass. App. Ct. 455, 467 (1989). Because a finding that the value of the stolen property received is in excess of $250 triggers an increased sentencing range, the value must be treated as an element of the crime, and thus proved by the Commonwealth beyond a reasonable doubt. See Commonwealth v. Beale, 434 Mass. 1024, 1025 (2001).

Even when viewed in the light most favorable to the Commonwealth, the evidence at trial was insufficient to establish that the value of the ring exceeded $250. The Commonwealth presented testimony that the mesh ring was of the

Tiffany brand and submitted to the jury a photograph of the ring. However, there was no evidence of the ring's value. Nor was the jury presented with the ring itself. It is true, as the Commonwealth points out, that the trier of fact may employ "common sense" and common experience to determine the valuation issue. See Commonwealth v. Muckle, 59 Mass. App. Ct. 631, 643 (2003), citing Commonwealth v. Hosman, 257 Mass. 379, 385-386 (1926). Here, however, equipped only with the brand and photograph of the ring, we cannot conclude that the application of common sense and experience is sufficient to fill the evidentiary gap. Compare Muckle, supra (noting jury may apply "common sense" to conclude that value of vehicle exceeded $250), with Tracy, 27 Mass. App. Ct. at 467 (concluding common experience of jurors insufficient to establish that value of firearm exceeded one hundred dollars). Although the evidence of the ring's value was insufficient as a matter of law to prove the value of the property, it is undisputed that the Commonwealth proved all the other elements of the offense charged. Thus, we conclude that a finding of guilty of the lesser included misdemeanor offense of receiving stolen property with a value of $250 or less, in violation of G. L. c. 266, § 60, shall enter against the defendant. See Commonwealth v. Deberry, 441 Mass. 211, 224 (2004).

Conclusion.  For the reasons stated above, the order denying the motion to suppress the images from the digital camera is reversed.  Accordingly, the judgment of conviction of carrying a firearm without a license, in violation of G. L. c. 269, § 10 (a), is vacated, and the matter is remanded for further proceedings consistent with this opinion.  With respect to the defendant's conviction of receiving stolen property valued over $250, the judgment is vacated, and the case is remanded to the District Court, where a finding of guilty of the lesser included offense of receiving stolen property with a value of $250 or less shall enter.

So ordered.